## Wilmoth *v.* Hensel, Appellant.

[Marked to be reported.]

*Reward—Violation of election law—Conviction.*

A reward offered for the prosecution and conviction of persons who violate any of the statutes against bribery or corruption at elections, is earned by procuring the prosecution, followed by a plea of guilty, of a tax collector who issued false tax receipts. The fact that sentence was suspended is not material, the word conviction being construed in its popular and not its technical sense.

*Evidence—Corroborative testimony.*

It is not error in such a case to admit the corroborative testimony of third parties who, at plaintiff's instance, detected the same collector in further violations, upon which no prosecution was had.

*Public policy—Contract—Consideration—Good faith.*

It is not against public policy to offer a reward for conviction of offences thereafter committed against election laws; nor is such a contract without consideration, if acted upon in good faith. The bona fides of such action, where the evidence is conflicting as to whether or not plaintiff induced the commission of the crime in order to procure the reward, is for the jury.

*Individual or representative liability.*

Defendant, as chairman of a state committee, signed and published an offer of reward for conviction of persons violating the election laws. Subsequently, at a public meeting, he declared that he had $1,000 to pay for such a conviction. The question as to defendant's individual liability was properly left to the jury.

Argued May 2, 1892. Appeal, No. 48, July T., 1891, by defendant, W. U. Hensel, from judgment of C. P. McKean Co., Dec. T., 1883, No. 247, on verdict for plaintiff, B. J. Wilmoth. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, Mc-COLLUM, and MITCHELL, JJ.

Assumpsit for reward for conviction of violation of election laws.

The narr alleged that defendant, on or about Oct. 2, 1882,

(the date of the hand bill or advertisement) promised to pay a reward, quoting the language of the hand bill or advertisement, recited in the opinion of the Supreme Court; and on or about Nov. 4, 1882, "promised to pay $1,000 for the conviction of any person guilty of any violation of the election laws;" that plaintiff, relying upon the promises aforesaid, prosecuted and convicted one E. N. Howard, etc. And defendant, in consideration, etc., promised to pay plaintiff, etc.

On the trial, before OLMSTED, P. J., plaintiff, a railroad policeman, testified under objection and exception, that, the night before election, he procured from E. N. Howard, a tax collector, a tax receipt, in the name of E. T. Johnson, a fictitious person, paid for it and got a number of others in blank. The Johnson receipt and one of the blank receipts were then admitted in evidence, under objection and exception. [1]

Plaintiff offered in evidence the advertisement or hand bill, recited in the opinion of the Supreme Court. Objected to, because defendant purports therein to be acting in a representative capacity. Objection overruled and exception. [2]

W. H. Murphy, a witness for plaintiff, testified that, the evening before election, he got a tax receipt from Howard, in a fictitious name, paid for it and gave it to plaintiff. The receipt was then offered in evidence. Objected to as incompetent, for the reason that it does not appear that this receipt offered in evidence cut any figure in the prosecution of Howard.

The Court: The question is whether this shows that he was convicted on the procurement of Wilmoth for violation of election law. Objections overruled and exception. [3]

Depositions of John Murphy were offered in evidence to the effect that the witness, a detective, was sent to work for plaintiff to detect fraudulent issue of tax receipts, [stating instructions from plaintiff] and that [in pursuance of these instructions,] he procured a tax receipt from Howard, and saw two other men, James Brady and another, get receipts [describing one of the receipts]. Plaintiff paid witness for his services. The tax receipts were attached to the depositions as exhibits. The depositions were objected to, the portion in brackets stricken out and the rest received in evidence and read, and exception noted. [4]

Plaintiff then offered deposition of James Brady, substantially similar to preceding witness. Objected to as incompetent, unless it is proposed to be followed by evidence showing that E. N. Howard was indicted and convicted for issuing the tax receipt referred to by the witness in his deposition. Also generally that it is incompetent. Objections overruled and exceptions. [5]

The court charged in part as follows:

[ " There is some controversy in the case as to what the phraseology used by Hensel was on that occasion. It is contended by the plaintiff that he promised for himself, and that the offence was *any* violation of the election laws. Now that question you can determine from an examination of the evidence bearing on that question.] [16]

" There were several witnessess who testified as to what Mr. Hensel said at the public meeting. A handbill has been given in evidence to which it is said that Mr. Hensel referred, in which there is an offer to pay a thousand dollars for some violations of the election laws in which he signs himself as the chairman of a committee, not undertaking personally to pay it.

[" What did he do? Did he undertake to pay this reward personally, himself? And did he undertake to pay it for any violation of the election laws?] [17]

[" We have no hesitation in saying that the issuing of a receipt and dating it back, so as to make it a legal payment within the election laws, was a violation of the election laws. Under the law, as I recollect it, a tax, in order to make the person a legal voter—payment had to be made at least thirty days before the election, and we have no hesitation in saying that to go to a collector—that for a collector to receive money within the thirty days and give a receipt, dating it back of the thirty days, would be a violation of the election law. It is one of the things specially made an offence by the statutes of Pennsylvania.] [18] . . . .

[" Now, did Wilmoth undertake in good faith to procure the conviction of a person who was actually guilty of a violation of the election laws? You have heard the testimony on that point. I have no hesitation in saying that if Wilmoth induced this man to commit a crime, either by himself or those he employed, by any trick or device or artifice—induced him to do

a thing that he would not have done of his own volition and own mind—there could be no recovery. But if he simply went to him and asked him for a tax receipt, and that was all he did, and it was furnished him, I don't think that that was such a trick or artifice as makes it improper or illegal that Mr. Wilmoth should recover the reward alleged to have been offered.] [19]

[" If you should find that the defendant Hensel made a bona fide offer to pay a reward of a thousand dollars for a conviction of any person who had violated the election laws or would or should violate the laws, and that Mr. Wilmoth acting in good faith and without the commission of any offence against the law himself, did procure the evidence that warranted the conviction of the person for violating the election laws, we think that the plaintiff might recover. And if he recovers the verdict will be for one thousand dollars and interest upon it from some time in 1882."] [20]

Plaintiff's points were, among others, as follows:

" 2. It is not necessary to a conviction that a plea of guilty, or verdict of guilty should be followed by sentence." Affirmed. [14]

" 3. It is not against public policy to afford opportunity for the commission of crime to one disposed to do so. Affirmed." [15]

Defendant's points were as follows:

" 1. The declaration does not set out any cause of action against the defendant and the verdict should be for the defendant." Refused. [6]

" 2. If the defendant did offer a reward for the arrest and conviction of any person who should between the dates of the offer and the ensuing election commit any offence against the election laws of Pennsylvania, such offer was without consideration as between the plaintiff and defendant, as each had an equal interest in preserving the purity of elections in the state of which both were citizens, and the duty of one was the same as the other in regard to bringing to justice persons who should thereafter be guilty of violating the election laws, and such offer of reward for the conviction of persons for offences thereafter committed was void against public policy. *Answer:* We answer this in the negative. However, the point says,

'And such offer of reward for the conviction of persons for offences thereafter committed was void and against public policy.' We answer this in the negative." [7]

"3. The evidence shows that the plaintiff by himself and others in his employ induced E. N. Howard, the tax collector, to commit the offence for which he was indicted, and he cannot for that reason recover the reward offered by the defendant. It is against public policy to permit a person to reap a reward for inducing another to commit a crime or misdemeanor. *Answer :* We cannot affirm this point as it is drawn, as applicable to this case. We answer it in the negative." [8]

"4. The tax receipt issued by E. N. Howard was not procured for the purpose of being used at the ensuing election to enable the holders thereof to cast illegal votes, but for the mere purpose of inducing said Howard to so far violate the election laws as to entitle the plaintiff to claim the reward offered by the defendant, and such transaction does not come within the offer by the defendant, and there cannot be a recovery in this case. *Answer:* As an entire proposition, this point is answered in the negative." [9]

"5. An offer of a reward for the arrest and conviction of any person who shall thereafter commit an offence against the election laws cannot be enforced against the person making such offer, and for that reason there can be no recovery in this case." Refused. [10]

"6. E. N. Howard was not convicted of a violation of the election laws of Pennsylvania within the meaning of the offer made by the defendant, and for that reason the verdict should be for the defendant. *Answer :* On a former trial of this case we affirmed this point. As we had been educated in the law, we were of the opinion at that time that there was no legal conviction in the case. That the plea of guilty or a verdict of guilty did not constitute the legal meaning of the word, 'conviction,' that it did not constitute a conviction unless it was followed by the sentence of the court. We were firmly of that opinion, although, at that time, authorities were presented which I confess somewhat surprised us. But as we see the cases in Pennsylvania that have been decided some years ago, we are of the opinion that in the legal acceptation a plea of guilty, or a verdict of guilty, undisturbed, is to have the legal

effect of a conviction, the same effect that we were inclined at that time to give to a plea of guilty, or verdict of guilty, followed by a sentence; and with that view, we, at that time, affirmed the point. We answer it now in the negative. It is a close question, and in it we may be wrong." [11]

" 7. The offer of reward was made by the defendant in his representative capacity, as chairman of the committee, and he is not individually liable, and the verdict should be for the defendant. *Answer :* We cannot affirm this point; the question whether the defendant offered to pay the reward himself, personally, or offered it in his representative capacity of a member of the committee, and undertaking thereby not to bind himself but to bind the committee, is a question of fact for the jury to determine from the evidence in this case." [12]

" 8. Under the pleadings and evidence in this case the plaintiff is not entitled to recover. *Answer :* We cannot affirm that point; it asks us to withdraw the case from the jury." [13]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–5) admission of evidence as above, quoting bills of exception and evidence; and (6–20) instructions, quoting points, answers and charge.

*E. L. Keenan* and *M. F. Elliott*, for appellant.—1. Defendant's alleged promise should have been declared upon as made to plaintiff, not to the public. The tax receipts should have been excluded under the pleadings.

2. The handbill was not declared on; it was in contradiction of defendant's individual liability, and was incompetent under the pleadings.

3, 4, 5. The testimony of witnesses other than plaintiff, who procured tax receipts upon which no conviction was had, was irrelevant and should have been excluded.

6. Plaintiff's narr does not aver any promise to him, but to the public; he is a stranger to the consideration and cannot recover: Blymire v. Boistle, 6 Watts, 182; Morrison v. Beckley, 6 Watts, 349. A consideration is essential, and none is shown: Whitall v. Morse, 5 S. & R. 358; Irvine v. Bull, 4 Watts, 287.

7. Plaintiff was a public officer and bound by duty to seek for criminals and bring them to justice. He could earn no reward

by doing his duty : Pool v. Boston, 5 Cush. 219. And for the same reason the promise was invalid for lack of consideration.

8, 9. Plaintiff and his associates combined to induce the commission of the crime; it would be contrary to public morality and policy to permit him to recover a reward for procuring the punishment of the criminal: Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173; Holt v. Green, 73 Pa. 198; Adams Ex. Co. v. Reno, 11 Am. L. Reg. N. S. 753; 1 Whart. Cont. §§ 340, 343, 345, 370.

10. The thing contracted for had no existence at the time of alleged contract, but was brought about by unlawful combination and fraud : there· is no contract where the parties have in mind different things; and where performance becomes illegal it cannot be exacted.

11. The act of July 2, 1839, § 125, P. L. 546, under which Howard was indicted, imposes fine and imprisonment. in case of conviction; it must be strictly pursued: Act March 31, 1860, P. L. 426. Judgment is an essential part of conviction : Paley on Convictions, pp. 208, 209, 211; Smith v. Com., 14 S. & R. 69, 70.

12. Suit having been brought on the handbill, signed by defendant in his representative capacity, there could be no recovery against him individually.

13–20. The court below gave undue prominence to plaintiff's testimony. The procuring of the receipts merely as part of a scheme to obtain the reward, and not for actual use, was not such a violation of the election law as was contemplated by the statute, nor by the terms of the offer of reward.

*John G. Johnson* and *J. M. McClure*, for appellee.—The testimony as to tax receipts procured by others at plaintiff's instance was corroborative of his performance of the service which entitled him to reward, and hence admissible: McLeod v. Ginther, 80 Ky. 403. The handbill was likewise corroborative of plaintiff's statement as to defendant's verbal offer upon which he acted.

It is to be presumed that by " conviction " defendant meant conviction as used in common parlance and not in its technical sense. His real object was the protection of the ballot. Conviction with suspension of sentence was held to satisfy a similar offer

in Williams v. U. S., 12 Ct. Claims (U. S.) 192. Conviction defined in Burgess v. Boetefeur, 7 M. & G. 481; Anderson's L. Dic. 256; Shepherd v. People, 25 N. Y. 406; 1 Bish. Crim. Law, § 223. It may have a secondary or unusual meaning, including final judgment: U. S. v. Watkins, 7 Sawyer, 91–93. In many cases it refers to finding of guilt by verdict or plea of guilty, and not to sentence in addition: Quintard v. Knoedler, 53 Conn. 487–8; Bish. on Stat. Crimes, 348; Whart. Crim. Pl. & Pr. 935. And in its most common sense, signifies jury's finding of guilty: Com. v. Gorham, 99 Mass. 420; Com. v. Lockwood, 109 Mass. 323; Blair v. Com., 25 Grat. 850; Nason v. Staples, 48 Me. 123; Com. v. Richards, 17 Pick. 295; Smith v. Com., 14 S. & R. 69; Blaufus v. People, 69 N. Y. 107; York Co. v. Dalhousen, 45 Pa. 372. Where a reward was offered for conviction and two captured criminals confessed their guilt, but the indictments were dismissed at solicitation of their attorneys so as to use their testimony against others, it was held, in R. R. v. Goodnight, 19 Am. R. 80, that the reward had been earned.

That plaintiff's course was justifiable and proper, and not against public policy, see Wh. Cr. L. §§ 149, 231; U. S. v. Foye, 1 Curtis C. C. 364; U. S. v. Cottingham, 2 Blatchf. 470; U. S. v. Whittier, 5 Dillon, 39–41, 45; U. S. v. Blot, 11 Blatchf. 346; Bates v. U. S., 10 Fed. Rep. 92; People v. Noelke, 94 N. Y. 137; 1 Bish. Cr. L. § 262.

OPINION BY MR. CHIEF JUSTICE PAXSON, October 3, 1892.

This case was fought step by step in the court below and pressed with much zeal and ability here. The specifications of error are too numerous to be considered in detail. Several of them are to the admission of evidence; the remainder to answers to points, and the charge of the court.

The facts may be summarized as follows: During the political campaign of 1882, the appellant (defendant below) was chairman of the democratic state committee. It is alleged that as such chairman he caused to be published an advertisement offering a reward of one thousand dollars "for the prosecution and conviction of persons who violate any of the statutes of this commonwealth against bribery or corruption at elections;" that later in the campaign he visited Bradford,

McKean county, and in a political speech there he declared that his committee proposed to put a stop to bribery and corruption at elections, and that he had one thousand dollars to pay for the arrest and conviction of persons who violate the election laws at the coming election. It further appeared that one B. J. Wilmoth, the plaintiff below, on the night before the election, obtained from E. N. Howard, a tax collector of Bradford township, a tax receipt purporting to have been issued to E. S. Johnson, a fictitious person; that Wilmoth paid him for it and obtained from him at the same time a number of blank tax receipts; that he at once arrested Howard and had him bound over to appear at court. He was subsequently indicted for the offence to which he pleaded guilty; whereupon the court of quarter sessions suspended sentences; the defendant was allowed to go without day, and no punishment has ever been imposed upon him. It was alleged, however, that he was required to pay the costs.

This suit was brought in the court below by Wilmoth against the defendant to recover the reward of one thousand dollars offered by the latter. The defendant refused to pay on the grounds that the prosecution had not been bona fide; that the plaintiff had procured the offence to be committed, and that his offer of reward did not contemplate the payment of persons for procuring violations of the law.

The bona fides of the prosecution was fairly submitted to the jury. The learned judge below instructed them in his charge as follows: "I have no hesitation in saying that if Wilmoth induced this man to commit a crime, either by himself or those he employed, by any trick or device or artifice, induced him to do a thing that he would not have done of his own volition and own mind, there could be no recovery. But if he simply went to him and asked him for a tax receipt, and that was all he did, and it was furnished him, I don't think that that was such a trick or artifice as makes it improper or illegal that Mr. Wilmoth should recover the reward alleged to have been offered."

In view of this charge we must regard this branch of the case as disposed of by the verdict of the jury.

It was further contended by the appellant that there was no conviction within the meaning of the offer; that the convic-

tion is only complete when followed by the judgment of the court. Upon this point we have been furnished with an elaborate argument on both sides. It is not needed that we should enter upon a discussion of the meaning of the word " conviction " in its technical sense. We must regard it as it was probably intended to be used, in its popular sense. In common parlance, a verdict is called a conviction : Smith v. Commonwealth, 14 S. & R. 69. In this case there was more than a verdict. There was a plea of guilty, which was a confession of guilt by the defendant. This was all that it was possible for the prosecutor to do. He had brought the offender to the bar of the court and compelled a plea of guilty. He had no further control of the case. The sentence was entirely within the power of the court. We are of the opinion that Howard was convicted of an offence against the election laws within the meaning of the defendant's offer.

A careful examination of the specifications which refer to the admission of evidence fails to disclose error. All that was objectionable in the deposition of John Murphy appears to have been excluded, and the other specifications upon this branch of the case are without merit.

Nor do we find error in the answers to points. The position assumed by the defendant that if he did offer a reward " for the arrest and conviction of any person who should, between the dates of the offer and the ensuing election, commit any offence against the election laws of Pennsylvania, such offer was without consideration as between the plaintiff and defendant," cannot be sustained. See seventh specification. The reason given for this assumption is that each had an equal interest in preserving the purity of elections in the state of which both were citizens, and that the duty of one was the same as the duty of the other in regard to bringing to justice persons who should thereafter be guilty of violating the election laws. And the further suggestion was made that an offer of reward for the conviction of persons for offences thereafter committed, was void as against public policy.

We would regret to be compelled to sustain either of these positions. We must assume that the offer of this reward, made publicly, and in an impressive manner, at a large meeting of the Democratic party, was made honestly, and for the purpose of

preventing election frauds at the ensuing election. Considered in this light, it was a commendable act, and worthy of imitation by others. When acted upon by a citizen, and an offender brought to justice, by reason of the offer, we cannot say there was no consideration for the offer. While it may have been prompted by a sincere desire to enforce the election laws, it is perhaps not straining a point to say that the defendant may have at the same time intended to benefit the political party of which he is so conspicuous a member. Having had this advantage or consideration for his offer he is not in a position to repudiate it upon the ground of want of consideration. Upon the faith of it the plaintiff may have expended both time and money in doing what he was under no legal duty to do. He was not charged by the law, either with detecting offences or with bringing offenders to justice. On the contrary, those duties are cast by the law upon its legally constituted officers.

Even yet more untenable is the defendant's position that it is against public policy to offer a reward for the conviction of persons for offences thereafter to be committed against the election laws. We would be loath to believe that the defendant, in order to obtain a political advantage for his party, would have offered the reward if he knew it was against public policy. An offer of this kind is intended to deter people from the commission of such offences. There is nothing in it which operates as a lure or inducement to persons to violate the law. Offences against the election laws are the most deadly perils which the state has to endure. They strike at the foundations of social order. They are at all times difficult to reach, and, with few exceptions, go without detection and punishment. No surer method of reaching them has ever been devised than that of offering a reward. There are numerous instances in which it has been successful, of which the present case is one, and those who have procured this result are entitled to commendation for their liberality and public spirit.

We find no error in the answer of the court below to the defendant's second point, nor do we find substantial error in any of the other answers to points, or in those portions of the charge embraced in the respective specifications. The case was fairly submitted to the jury, and the verdict appears warranted by the testimony.

Judgment affirmed.