## Barry, Trustee, v. Gvoic.

*Rewards—Arrest by officers—Public policy.*

1. It is against public policy to permit constables or sheriffs to take a reward for making an arrest.

2. Where, however, such officers do not arrest under a warrant or arrest a fugitive from another state, the rule is different.

*Rewards—Judgment bond to secure payment of reward—Reward offered for arrest of murderer—Voluntary manslaughter.*

3. Where a father executed a judgment bond to a trustee to secure payment of a reward which he offered for the arrest of the person or persons who had committed the murder of his son and which he covenanted to pay "upon a conviction of murder being returned against the person or persons so arrested," a judgment on the bond cannot be sustained where the person arrested was found guilty of voluntary manslaughter and not of murder.

Rule to open judgment. C. P. Beaver Co., June T., 1924, No. 492.

*W. S.* and *W. S. Moore, Jr.,* for plaintiff.

*Lawrence M. Sebring,* for defendant.

READER, P. J., Aug. 20, 1926.—Upon the trial of the above entitled case after the plaintiff's case had been presented, the court, on motion of counsel for the defendant, directed that a compulsory non-suit be entered. Subsequently a motion to take off the non-suit was made. The motion has since been argued, and the case is now before us for disposition upon this motion.

On Nov. 3, 1923, one Mike Gvoic, son of the defendant, Ilija Gvoic, was killed in Beaver County by one Sylvannus Roach. The slayer fled from the State of Pennsylvania into the State of Virginia. The defendant offered a reward for the arrest and conviction of the person or persons committing the offence stated. As evidence of the offering of the reward and the terms upon which it would be paid, and also apparently as security for its payment, the defendant executed a bond, dated Nov. 20, 1923, payable to R. D. Barry, trustee, for the benefit of the person or persons entitled under its terms. This bond was in the sum of $500, and the condition thereof is, as hereinafter stated, in the form of an issue framed by the court for the trial of the instant case. The

plaintiff, claiming to be entitled to the reward, obtained possession of the bond above referred to and caused judgment to be entered upon it in this court, at No. 492, June Term, 1924, said judgment being in the name of R. D. Barry, Trustee, for the use of G. W. Shifflet, *v.* Ilija Gvoic. This judgment was entered on May 23, 1924.

A petition was subsequently presented praying that the judgment so entered be stricken off. The prayer of this petition was refused in an opinion and order filed Aug. 16, 1924, on the ground that the judgment being regular upon its face could not be stricken off. In the opinion filed we suggested the propriety of proceeding by a petition to open the judgment. Such a petition was subsequently presented, and on July 15, 1925, the judgment was opened for the reasons set out in an opinion filed on that date.

From the testimony offered at the trial, it appeared that the use-plaintiff, G. W. Shifflet, resided in Rockingham County, Virginia, near the town of Elkton. He testified that he heard of the killing of Gvoic and of the fact that a reward was offered. It appeared from the evidence that a letter of the County Detective of Beaver County, addressed to Russ Malone, Sheriff of Green County, Virginia, and dated Nov. 24, 1923, called the attention of the sheriff to the fact that Silverman Roche, stated in the testimony as being the same person known as Sylvannus Roach, was wanted in Beaver County for murder, and that a reward of $500 had been posted for the capture and arrest of the man. The letter further stated that the money had been placed in one of the banks of Beaver County. This letter was brought to the attention of the plaintiff.

The plaintiff testified that he learned that Sylvannus Roach was in Rockingham County, and that he made search for him; that Roach went into Green County and then returned to Rockingham County. The plaintiff says he was advised of his return by an uncle of Roach, and that shortly after that he met Roach upon the road and was told by Roach that he was coming to give himself up, having heard that Shifflet was looking for him. Shifflet took charge of Roach and kept him in his custody for a few days awaiting the arrival of officers from Beaver County, to whom he had caused notice to be given of the apprehension of Roach. Shifflet subsequently accompanied the Beaver County officers in bringing Roach back to Beaver County. Shifflet testified that he had no warrant at any time for the arrest of Roach. There was evidence to the effect that Roach stated that he was afraid he might be injured by some of the officers and preferred to be in the custody of Shifflet, as he thought he would protect him.

W. E. Lucas, Chief of Police of Elkton, Virginia, testified that he had received a warrant for the arrest of Roach, but being unable to execute it on account of lameness, had sent it to W. N. Dillard, then Sheriff of Rockingham County, and that the sheriff had sent it to Shifflet, and that he understood that the arrest was made by Shifflet under this warrant. This testimony is, of course, in part hearsay, and, in any event, we could not say as a matter of law that Shifflet had acted under a warrant in making the arrest.

Upon the trial at the close of plaintiff's case counsel for defendant made a motion for a compulsory non-suit and advanced several reasons in support of the motion, which were argued by them at considerable length. The motion was granted and the compulsory non-suit entered. At the time, we stated as our reasons for entering the non-suit, first, that it did not seem to us under the evidence that the use-plaintiff, Shifflet, was principally instrumental in the arrest and conviction of Roach; and second, that in view of his testimony that he was a constable and also a deputy sheriff of the county in which

he made the arrest, he was acting within the line of his duty and could not properly claim the reward.

In acting upon the first reason we were moved by a consideration of the case of Rinehart v. City of Lancaster, 6 Atl. Repr. 91; 3 Sadler, 210. From a more careful consideration of the evidence, however, and a more thorough examination of the law, we are satisfied that this reason alone would not justify the entering of a non-suit, but that the question of the right of the use-plaintiff to the reward in this respect would be a matter of fact to be submitted to the jury with proper instructions as to the law.

There are several authorities which seem to support the principle of law involved in the second reason stated by us for entering the non-suit. These cases hold that it is a general principle of the law that it is the duty of a constable or other peace officer to pursue and arrest offenders against whom he has criminal process in his hands, and that it is against public policy to permit such officers to take a reward for the performance of such services. The rule is thus stated in the cases of Smith v. Whildin, 10 Pa. 39; Com. v. Lane, 28 Pa. Superior Ct. 149, and Smith v. Lancaster County, 29 Dist. R. 902.

A fuller examination of the authorities, however, shows that exceptions to the rule are recognized where the circumstances are such that it cannot be said that it is the duty of the officer in question to pursue, search for and arrest the alleged criminal. Such an exception has been held to arise where the officer was not charged by warrant or other judicial process to make the arrest, or where the arrest was made by an officer in one state of a fugitive from another jurisdiction. In these cases it has been held that the officer, if he makes the arrest and otherwise complies with the conditions attending the offer of the reward, may claim the reward. A distinction also seems to be recognized between the right to take a reward from a private individual and the right to take one authorized by statute. Among the cases illustrating these exceptions are the following: Marsh v. Wells-Fargo & Co. Express, 43 L. R. A. (N. S.) 133; Smith v. Vernon County, 87 S. W. Repr. 949; 70 L. R. A. 596; U. S. v. Matthews, 173 U. S. 381.

The cases above cited also cite numerous other cases to the same effect.

In the Pennsylvania case of Creamer et al. v. Hall, 2 Del. Co. Reps. 378, it was held that the case was not ruled by the decision in Smith v. Whildin, 10 Pa. 39, because the officers in question were under no obligation to make the arrest, no warrant having been placed in their hands. As above noted, in the instant case it does not appear that Mr. Shifflet, the use-plaintiff, was acting under a warrant in arresting Roach. He, himself, testified that he had no such warrant; and, as we have already indicated, the testimony of the Chief of Police of Elkton to the contrary is not convincing; and in any event the state of the testimony would render this question one of fact to be determined by the jury.

It seems to us from a consideration of the matters hereinbefore stated that the use-plaintiff performed a substantial service in the apprehension of Roach by taking him into custody and holding him until the Pennsylvania officers reached Virginia and received him; and, also, that we could not properly say as a matter of law that the use-plaintiff by virtue of his office was precluded from claiming the reward. If these were the only reasons to be urged in support of the non-suit we should feel that it should be stricken off.

As already stated, however, other reasons were urged by counsel for the defendant. One of these reasons we think it is our duty to further consider at this time. It was very strongly urged upon the trial by counsel for the

defendant that the use-plaintiff had not brought himself within the terms of the bond upon which the judgment in the instant case was entered.

After the opening of the judgment, to which reference has already been made, proposed forms of the issue to be tried by the jury were presented by counsel for the use-plaintiff and counsel for defendant. After considering these the court framed the issue as follows:

"1. Is the use-plaintiff, G. W. Shifflet, entitled to recover from the defendant, Ilija Gvoic, the sum of five hundred ($500.00) dollars, or any part thereof, under the terms and conditions of the bond upon which the above entitled judgment was entered, executed by the defendant in favor of R. D. Barry, Trustee, in the sum of five hundred dollars, dated November 20, 1923; the condition of which bond is as follows:

" 'Whereas, my son Mike Gvoic was murdered on the third day of November, 1923, in the said County of Beaver, Pennsylvania, and

" 'Whereas, I am willing to pay to the person or persons who shall arrest and convict the person or persons committing said murder of the said crime of murder.

" 'Now the condition of this obligation is such, That if I, my heirs, executors or administrators, shall and do well and truly pay or cause to be paid unto the said R. D. Barry, Trustee, for the person or persons arresting and convicting the person or persons committing the offence hereinabove mentioned, of the crime of murdering my said son, his heirs, executors, administrators or assigns, the just sum of Five hundred ($500.00) Dollars upon a conviction of murder being returned against the person or persons so arrested, then this obligation to be void; otherwise to be and remain in full force and virtue. If such conviction shall not be obtained within one year from the date of this bond, then this obligation shall become void and of no effect.'

"2. Was Sylvannus Roach arrested and convicted for the commission of the murder of Mike Gvoic on Nov. 3, 1923, in said county of Beaver, within the meaning and intent of said above recited bond dated Nov. 20, 1923?

"3. Did said G. W. Shifflet arrest and convict Sylvannus Roach, or cause him to be arrested and convicted, for the murder of Mike Gvoic on Nov. 3, 1923, in said County of Beaver, within the meaning and intent of said above recited bond dated Nov. 20, 1923?

"4. Did said G. W. Shifflet, by his conduct prior to or upon the trial of said Sylvannus Roach for the murder of said Mike Gvoic on Nov. 3, 1923, preclude and bar himself from recovering upon and in accordance with the terms and conditions of said above recited bond dated Nov. 20, 1923?

The issue thus framed by the court was not excepted to by counsel on either side, and the case went to trial upon the issue thus stated. The issue contains a copy of the provisions of the bond in suit which are material for our present purpose.

Upon the trial of Sylvannus Roach, the jury, on March 13, 1924, returned a verdict of guilty of voluntary manslaughter with a recommendation of the defendant to the mercy of the court. Following the verdict, the court, by Baldwin, P. J., paroled the defendant. It was urged that the fact that no sentence was pronounced upon the verdict prevented there being such a conviction in the case as is contemplated by law, as well as by the bond in question. This position, however, seems to us to be untenable, in view of the decision of the Supreme Court in the case of Wilmoth *v.* Hensel, 151 Pa. 200, and we think it requires no further consideration.

It was further urged, however, that the verdict of guilty of voluntary manslaughter did not bring the case within the terms of the bond, for the

reason that the bond contemplates a conviction of murder as a prerequisite to liability under its terms. It now seems to us that this presents the most serious question in the case. It will appear from a reading of the portions of the bond above quoted that throughout the term "murder" is used in connection with the killing of defendant's son, and also with reference to the conviction of the offender, which is sought to be aided by the offering of the reward in question.

In the first place, it seems to us that the use-plaintiff can recover in this, action only by bringing himself within the terms of the bond. It is possible that he might have brought an action of *assumpsit* to recover the penalty, and might have shown by a combination of written and parol proof a broader ground for recovery than is furnished by the bond itself. He might have shown a contract of more generous terms than those stated in the bond. It seems to us, however, that when he caused judgment to be entered upon the bond in his own favor as use-plaintiff, he adopted and affirmed its terms as constituting the contract between himself and the defendant with reference to the subject-matter of the present action. He is, therefore, bound and limited by the terms of the bond, and it becomes necessary to ascertain the legal effect of those terms.

The liability of the defendant, the obligor in the bond, is by its terms expressly conditioned "upon a conviction of murder being returned against the person or persons so arrested." Does a conviction of voluntary manslaughter satisfy this condition? We have been unable to find any decision precisely covering this question. It has long been the law in Pennsylvania that upon an indictment charging the crime of murder only a defendant may be acquitted of murder but found guilty of voluntary manslaughter. This was decided in the early case of Com. *v.* Gable, 7 S. & R. 423, in which case Chief Justice Tilghman said that "manslaughter is included in murder." The rule established in this case has been followed in a long line of other cases, among which are: Walters *v.* Com., 44 Pa. 135, 138; Hilands *v.* Com., 114 Pa. 372, 376; Com. *v.* Weinberg, 276 Pa. 255, 258; Com. *v.* Bishop, 285 Pa. 49, 58; Com. *v.* Adams, 2 Pa. Superior Ct. 46, 48.

The foundation for the rule seems to be not that murder and voluntary manslaughter are identical, but that the greater offence includes the lesser, and both murder and voluntary manslaughter being felonious homicides may be embraced within a single indictment. The cases cited, as well as others, hold that under an indictment charging murder a defendant cannot be convicted of involuntary manslaughter, because the latter is by statute made a misdemeanor only. Throughout the line of cases referred to, however, the distinction between murder and voluntary manslaughter is never obscured. The essence of that distinction is, that in order to constitute murder at common law, and murder either of the first or second degree under our statutory classification, there must be present the element of malice, while the grade of the crime is reduced to voluntary manslaughter only when this element of malice is wholly absent. This distinction had its origin at a very early period in the English common law. It has been uniformly maintained throughout the development of our own legal system and is one of the most important distinctions in our criminal law. It is not possible legally to confound murder and voluntary manslaughter.

As stated, we have not been able to find any decision covering the specific question now under consideration. We have found, however, a California case which, while not in point, is very instructive. In the case of Estate of Patrick Kirby, 121 Pac. Repr. 370, 39 L. R. A. (N. S.) 1088, the Supreme

Barry, Trustee, *v.* Gvoic.

Court of that state, in passing upon its laws of descent, was called upon to construe the term "murder." Upon the distribution of the estate of Patrick Kirby, it appeared that one of his surviving heirs was Michael Kirby, and that he had transferred his interest in the estate to his son, James Kirby. It further appeared that Michael Kirby had been charged with the murder of Patrick Kirby. Upon trial he was convicted of the crime of manslaughter. A provision of the intestate laws of California at the time was as follows: "No person who has been convicted of the murder of the decedent shall be entitled to succeed to any portion of his estate; but the portion thereof to which he would otherwise be entitled to succeed descends to the other persons entitled thereto under the provisions of this title." The right of James Kirby as assignee of the interest of Michael Kirby to participate in the distribution was challenged on the ground of the said conviction of Michael Kirby. The question before the court was as to whether the conviction of manslaughter was the equivalent in legal effect to the conviction of murder prescribed by the statute. This question is considered at some length in the opinion of the court. From the discussion in that opinion it seems that the definition of murder, both of the first and second degree, contained in the California statute in force at the time was almost identical with the definition thereof contained in our Pennsylvania statutes. The law of California also recognized at the time the distinction between murder as a malicious homicide and voluntary manslaughter as a non-malicious homicide, which we have already stated as one of the fundamental principles of our Pennsylvania law. The court held that the conviction of voluntary manslaughter was not a conviction of murder, and that the claimant was not precluded from participating in the distribution of the estate by reason of the conviction of his assignor.

It is true that the general tendency of the courts is to construe liberally offers of rewards for the apprehension and conviction of persons charged with crimes and to discourage technical defences interposed in actions to recover such rewards: 23 Ruling Case Law, 1128, par. 17. On the other hand, where one seeks to recover upon the basis of a contract whose terms are specific, he must bring himself within those terms. If the term "murder" had been used generally as merely descriptive of the offence of the killing of defendant's son, and with a looseness which would permit us to treat it as merely equivalent to the term "killing" or the term "homicide," we would feel disposed to treat the conviction relied upon in the instant case as within the terms of the bond. In no place in the bond, however, is any other term used than that of "murder." And, in immediate connection with the statement of the obligation to pay the sum of $500, it is predicated, as above stated, "upon a conviction of murder being returned against the person or persons so arrested." This statement of the essential condition upon which the right to recover the reward depends is so specific and unambiguous that it seems to us that we cannot by any sound interpretation substitute a conviction of voluntary manslaughter for that prescribed by the bond. We are of the opinion, therefore, that for this reason the defendant was entitled to the compulsory non-suit entered upon the trial of the case. He is not to be deprived of this right now because the court at the time of entering the non-suit was moved by other reasons.

*Order*—Now, to wit, Aug. 20, 1926, the motion to take off the compulsory non-suit is overruled.

Same day, an exception granted and bill sealed to the plaintiff.

From William F. Schutte, Beaver, Pa.