## Wilner's Petition.

CYRUS E. WOODS, Att'y-Gen., July 24, 1929.—This is an application to the Attorney-General to institute proceedings by writ of *quo warranto* against Frank P. Barnhart, Additional Law Judge of the 47th Judicial District of Pennsylvania.

On May 16, 1929, the Governor appointed Frank P. Barnhart, of the City of Johnstown, Pennsylvania, as Additional Law Judge for the 47th Judicial District.  The Secretary of the Commonwealth issued a commission to him, and on May 20, 1929, the said Frank P. Barnhart took the oath as Additional Law Judge, aforesaid, and has since been serving in that capacity.

Shortly after the said Frank P. Barnhart was commissioned and had qualified as a judge for the 47th Judicial District, a proposed suggestion for a writ of *quo warranto* was presented to the Attorney-General, in which it was averred that the said Frank P. Barnhart was incapable of holding any office of trust or profit in this Commonwealth, and especially of holding the office of Additional Law Judge of the 47th Judicial District, for the reason that on Feb. 19, 1919, at No. 74, December Sessions, 1918, in the Court of Quarter Sessions of Cambria County, Pennsylvania, he was charged with an infamous crime, viz., the crime of forgery; that he entered a plea of not guilty and proceeded with the trial of the said case; that during the trial the plea of not guilty was withdrawn and a plea of *nolo contendere* was entered; and that on Feb. 20, 1919, the court made the following order: "We think he (meaning Frank P. Barnhart) has done the manly thing to enter this plea and terminate the cause at this time, and we feel he has fully learned his lesson; and under the circumstances we are going to suspend sentence upon him for this infraction of the law and upon payment of the costs, and that is the sentence of the court."

This proposed suggestion for writ of *quo warranto* was accompanied by an affidavit made by Warren S. Krise and Edwin K. Kintner. Subsequently, the affidavit of Warren S. Krise was withdrawn. The proposed suggestion was not accompanied by any petition. After numerous requests and considerable delay, a certification of the court record in the case of Com. *v.* Barnhart was finally submitted to the Attorney-General on July 8, 1929, being the time set by the Attorney-General for a hearing of the complaint. At this hearing it was agreed by the attorneys for both the petitioner and the respondent that the hearing should be proceeded with and that subsequently a petition and answer would be filed in order that all the questions and facts involved might be fully presented to the Attorney-General as a matter of record. This petition was not received until July 17, 1929.

The petition presents the same facts as were set up in the proposed suggestion for *quo warranto* previously referred to. The forgery charged consisted in the fixing of a seal after the last of three names on a judgment note, the word "Seal" having been printed after the other two names. The respondent in his answer contends that in entering a plea of *nolo contendere* during the trial, by said plea he simply admitted a physical act but not an act with any criminal intent to prejudice the rights of any one. However, in my consideration of this case, I am restricted to the record as it stands and the merits thereof cannot be material in my determination of this proceeding. He also contends in his answer that he was not "convicted" within the meaning of that term in article II, section 7, of the Constitution.

Two questions are presented by the petition and answer for my consideation and determination as to whether a suggestion for a writ of *quo warranto* should be filed by me in this case. The first question is whether or not Frank P. Barnhart was charged with an infamous offense within the meaning of article II, section 7, of the Constitution. However, it was agreed by counsel for the respondent that the crime of forgery and altering a written instrument is an infamous crime within the terms of the said article of the Constitution, so a discussion of this question is unnecessary. This question, however, seems to be clearly settled by the Supreme Court.

The next question is whether said Frank P. Barnhart, defendant, was "convicted" within the meaning of that term as used in article II, section 7, of the Constitution. This is the vital question in the case. In fact, it is the only issue for my determination here.

Article II, section 7, of the Constitution provides: "No person hereafter convicted of embezzlement of public moneys, bribery, perjury or other infamous crime shall be eligible to the General Assembly or capable of holding any office of trust or profit in this Commonwealth."

The record discloses that upon the plea of *nolo contendere* by the respondent sentence was suspended by the court by the use of the language previously quoted in the proposed suggestion for a writ of *quo warranto*. This appears from an examination of the record, which was certified as a whole by the Clerk of the Court of Quarter Sessions of Cambria County. According to this certified record, the accuracy of which was admitted by all parties at the time of the hearing before me, no sentence, other than the order suspending sentence previously quoted, was ever imposed upon said respondent.

However, it was contended at the time of the hearing before me by Attorney J. J. Kintner, who represented the petitioners, that said suspended sentence was a "conviction" within the meaning of that term in said article II, section 7, of the Constitution. This contention was based first on the fact that Judge Quigley, in suspending sentence, said, at the conclusion thereof, "and that is the sentence of the court." This contention was made notwithstanding the fact that the court had just previously stated clearly and concisely that he was *suspending* sentence on the defendant and gave his reasons therefor. This contention of counsel for the complainants has no merit because of the fact that the Act of March 31, 1860, § 169, P. L. 423, which makes the fraudulently making or altering of any written instrument a misdemeanor and provides for the punishment thereof, expressly provides that the sentence of the court in such cases shall be "to pay a fine, not exceeding $1000, and to undergo an imprisonment by separate or solitary confinement at labor, not exceeding ten years." It is, therefore, made imperative by the express mandate of the law that the court, if it had imposed a sentence in this case, must have imposed both imprisonment and fine. Neither fine nor imprisonment was imposed in this case, and the mere imposition of costs cannot be construed as the imposition of a sentence. In Pennsylvania, the suspension of sentence on payment of costs is not a sentence or judgment: Com. *v.* Carelli, 90 Pa. Superior Ct. 416. In Com. *v.* Hamel, 44 Pa. Superior Ct. 464, the record discloses that sentence was suspended upon the payment of costs in the following order: "June 9, 1909, defendant *sentenced* to pay the costs of prosecution and further sentence suspended." In this case, the court held that this was not a sentence, but was a *suspension* of sentence.

The other contention made by counsel for the petitioners in support of their argument that the suspension of sentence by the court in this case was a "conviction" within the meaning of that term as used in article II, section 7, of the Constitution, was that the term "conviction" as used therein must be taken in its popular sense and not in its legal or technical sense. Various Pennsylvania Supreme and Superior Court cases were cited, which I have carefully examined, but they do not support the contention made. The case upon which petitioners chiefly rely and which they feel bears the closest analogy to the situation here presented is the case of Wilmoth *v.* Hensel, 151 Pa. 200. It may be well to note briefly the facts in that case. That is a case in which a reward was offered for the prosecution and conviction of persons who violated any of the statutes against bribery or corruption at a certain election. The offer of this reward was made in a political speech by the defendant, he being then Chairman of the Democratic State Committee. The plaintiff in that case, pursuant to the offer which had been made at a political meeting in his part of the State, instituted the prosecution of a certain defend-

ant for a violation of the election laws of the Commonwealth at said election, and the defendant entered a plea of guilty, but sentence was suspended by the court. With respect to the question whether or not there was a "conviction" in this case within the meaning of that term as used by the defendant when he made said offer of reward, the Supreme Court, in its opinion, said: "It is not needed that we should enter upon a discussion of the meaning of the word 'conviction' in its technical sense. We must regard it as it was probably intended to be used, in its popular sense. In common parlance, a verdict is called a conviction: Smith v. Com., 14 S. & R. 69. In this case there was more than a verdict. There was a plea of guilty, which was a confession of guilt by the defendant. This was all that it was possible for the prosecutor to do. He had brought the offender to the bar of the court and compelled a plea of guilty. He had no further control of the case. The sentence was entirely within the power of the court. We are of the opinion that Howard was convicted of an offense against the election laws within the meaning of the defendant's offer."

In the case of Com. v. Minnich, 250 Pa. 363, where the court, in considering the meaning of the term "conviction" as used in the case, where the "record of conviction" was introduced in evidence in the trial of an indictment charging the defendant as an accessory to a murder, the record of the conviction of the principal simply showed that a verdict of guilty was rendered, but that no judgment was entered thereon, and it was contended by the appellant that such record was inadmissible. The court, in discussing the meaning of the term "conviction," referred, *inter alia,* to the case of Milmoth v. Hensel, aforementioned, in the following language: "Whatever difficulty we may encounter here will be found due to the fact that the word conviction is of equivocal meaning. It has a popular as well as technical meaning. As popularly used, it implies nothing more than a finding of guilty by a jury, and this meaning has been allowed it in several of our cases, notably in York County v. Dalhousen, 45 Pa. 372; Wilmoth v. Hensel, 151 Pa. 200; while in others, as technically understood, it means the ascertainment of the guilt of the accused and judgment thereon by the court, implying not only a verdict but judgment or sentence thereon, as in Smith v. Com., 14 S. & R. 69; Cumberland County v. Holcomb, 36 Pa. 349. The difficulty becomes more apparent than real if we are content to apply the ordinary rules of construction. Technical legal terms are to be taken, in the absence of countervailing intent, in their established common law significance, for the reason that they have a definite meaning which is supposed to have been understood by those who were or ought to have been learned in the law."

In Shields v. Westmoreland County, 253 Pa. 271, the court, in its opinion, interpreted the word "conviction" as used in article II, section 7, of the Constitution, to the effect that there could not be any conviction until a sentence had been imposed. The court said: "By section 7, article II of the Constitution, it is declared .that 'No person hereafter convicted of embezzlement of public moneys, bribery, perjury or other infamous crime, shall be eligible to the general assembly, or capable of holding any office of trust or profit in this Commonwealth.' When Shields was *sentenced* May 11, 1912, on the indictments charging him with embezzlement and perjury, he then became convicted of those offenses. The returns of guilty by the jury did not convict him in the legal sense of that term, but *judgment on the verdicts did:* Com. v. Minnich, 250 Pa. 363; Com. v. Vitale, 250 Pa. 548."

The distinction between the words "convict" or "conviction" as it is commonly used and in its legal sense is found in the case of People v. Fabian,

192 N. Y. 443; 85 N. E. Repr. 672; 18 L. R. A. (N. S.) 684. In this case the indictment charged the defendant with the crime of knowingly voting at an election "not being qualified therefor." The alleged disqualification was based on the fact that the voter had previously been indicted for burglary in the first degree, and upon his trial therefor a verdict had been rendered against him, although no judgment was ever entered upon the verdict, sentence having been suspended. The defendant demurred to the indictment upon the ground that the facts stated therein did not constitute a crime; the specific basis of his objection being that a voter has not been "convicted" within the meaning of the Constitution and the qualifying statutes unless the verdict against him had been followed by a judgment. Mr. Justice Bartlett, delivering the opinion of the court, said: "Upon reason, apart from authority, it will hardly be contended that a man should be deprived of the right of suffrage by a less conclusive judicial pronouncement against him than is required to disqualify him or affect his credibility as a witness. The disqualification of a witness on the ground that he has been convicted of a crime is clearly analogous to the disfranchisement of a voter on the same ground. In discussing the rule which thus renders a witness incompetent, in the case of Faunce v. People, 51 Ill. 311, the Supreme Court of Illinois has said: 'An examination of the adjudged cases in the various states of the Union, where substantially the same laws are in force, will show that it is not the commission of the crime, nor the verdict of guilty, nor the punishment, nor the infamous nature of the punishment, but the final judgment of the court that renders the culprit incompetent. It is true that writers and judges have loosely said that a party is convicted on the finding of a verdict against him. It is true in a sense that he has been convicted by the jury, but not until the judgment is rendered is he convicted by the law; and the statute only, like the common law, refers to the conviction imposed by the law.' It may readily be conceded that the words 'convicted' and 'conviction' are often employed with reference to the verdict in a criminal case, as distinguished from the judgment, without affecting the validity of this argument as to the meaning of 'convicted' in the constitutional provision under consideration and in the legislative enactments adopted in pursuance thereof."

I take it that the language of the Supreme Court in Shields v. Westmoreland County, supra, expressly determines that the term "conviction" as used in article II, section 7, of the Pennsylvania Constitution, must be construed in its legal sense, and not in its popular sense, and can only be so treated. In the light of this decision and the other decisions cited therein by the court, the "conviction" referred to in this section and article of the Constitution is a conviction by the law. The framers of the Constitution were not dealing loosely with the term in question, but had no other meaning in mind than a "conviction" in a court of law in the legal sense and significance of that term. The plea of nolo contendere is not such a "conviction," nor is a suspension of sentence by the court upon payment of the costs.

In this case, there was no sentence. Without a sentence there could, of course, be no judgment, and without a judgment there could be no conviction, within the meaning of that term as used in article II, section 7, of the Constitution, as definitely decided in the case of Shields v. Westmoreland County, supra.

I am of opinion, further, that a proceeding in quo warranto, being an extraordinary remedy, should not be instituted by the Attorney-General unless a clear, prima facie case is made out and it is apparent that litigation would be successful in the court. This position has been taken by former Attorneys-

General of this Commonwealth. It is clearly the right and the duty of the Attorney-General to decline to ask for relief when he believes that, under the law, the petitioner is not entitled to receive it: Cheetham et al. *v.* McCormick, 178 Pa. 186.

With respect to the application here made, I am clearly of opinion that no *prima facie* case has been made out and that the proceeding by a writ of *quo warranto* could not be successful in the courts. The fundamental essential in the proposed proceeding, to wit, that said Frank P. Barnhart was "convicted" of an infamous crime within the meaning of article II, section 7, of the Pennsylvania Constitution does not exist, and a contention to the contrary could not be sustained unless the Supreme Court should reverse a long line of its former decisions.

For the reasons given herein, the prayer of the petition is refused.

From C. P. Addams, Harrisburg, Pa.