## Hileman, Appellant, *v.* Borough of West Elizabeth Council et al.

276

Argued April 11, 1935.

Be-
fore KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER, JAMES and RHODES, JJ.

*John W. Cost,* for appellant, filed no brief.

*Charles A. Lewis,* with him *Charles P. Lewis,* for ap-
pellees.

OPINION BY STADTFELD, J., July 18, 1935:

This was an action in assumpsit by James P. Hile-
man against The Borough of West Elizabeth Council,
and the individual members thereof, J. B. Abraham,
Burgess, W. V. Valenson, Constable, and William
Braum and Edward Braum, to recover a reward in
the sum of five hundred dollars alleged to have been
offered by Braum Bros., or by William and Edward
Braum, for the arrest and conviction of the murderers
of August Braum, Jr., and for the recovery of a reward
of the same amount as offered by resolution of the Bor-
ough Council of West Elizabeth for the same services.
The case was tried in the court below before SOFFEL, J.,
and a jury, upon plaintiff's amended statement of
claim and the separate affidavits of defense as filed by

Braum Bros. jointly and individually, and by the other defendants collectively.

The facts are correctly stated in the opinion of the lower court from which we quote as follows: "On or about October 4, 1930, August Braum, Jr., was killed by three negroes in his butcher shop located in the Borough of West Elizabeth. At the time of his death the said decedent was president of the council of the Borough of West Elizabeth. Subsequent to his death said borough council held a meeting at which a resolution was passed authorizing the payment of a reward of five hundred dollars for the arrest and conviction of the murderers of August Braum, Jr. A printed handbill setting forth the offer of reward was posted throughout the Monongahela Valley, and the local newspapers carried the announcement of the murder and the reward. The handbill contained the following statement:

$1000

REWARD

Will be paid for the arrest and conviction of the murderers of August Braum, Jr., at West Elizabeth on October 4, 1930. Five Hundred ($500) Dollars will be paid by West Elizabeth Borough Council and Five Hundred ($500) Dollars by Braum Brothers of Elizabeth, Pa.

The negro who did the shooting is about 5 feet 8 inches tall, weighs 150 to 160 pounds, is copper color, has pox marks on side of face, was poorly dressed and wore brown cap.

Wire or telephone information to

W. V. VALENSON
Phone Elizabeth 79
West Elizabeth, Penna.

or

J. B. Abraham, Burgess
Phone Elizabeth 33
West Elizabeth, Penna.

"From October 4, 1930, until October 16, 1930, the whereabouts of the murderers was unknown. Plaintiff read of the offer in the Charleroi daily paper and later saw the printed handbill posted in the Charleroi police station. Induced by the offer of reward, the plaintiff joined in the search for the slayers. On October 16, 1930, the plaintiff saw two colored men in Donora and notified the chief of police of Donora, who sent a constable and a deputy constable to arrest the suspects. The plaintiff testified that he later identified the slayers in a pool-room in Donora. The officers did not manacle the prisoners who escaped and fled to the Donora railroad yards, where they were subdued and arrested. They were taken to the Donora jail and later turned over to the Allegheny County Detective Bureau, tried, convicted and found guilty of murder. One of the three men who had participated in the crime had already been arrested in Monessen by a former chief of police. The three were charged with murder and two of them electrocuted, one having died in the Allegheny County Jail pending execution. On October 17, 1930, the day after the arrest of said criminals, the plaintiff went personally to William Braum and Edward Braum, and demanded the reward. On October 22, 1930, he made a written demand, through Attorney H. Russell Stahlman of Charleroi, for payment of the reward. No reply was received. Plaintiff then entered suit in assumpsit to collect the reward offered."

The court below granted motions of defense counsel for directed verdicts in favor of all defendants except the Braum Brothers, and the case was submitted to the jury on the question of the liability of the remaining defendants, William and Edward Braum, for the payment of the reward to the plaintiff. The jury rendered a verdict in favor of plaintiff against the Braum Bros., William and Edward Braum. Motions for new trial and for judgment non obstante veredicto were made on

their behalf, and after argument the court entered judg-
ment in favor of said defendants. From that judgment
this appeal was taken.

The law governing and controlling the recovery of
rewards, so far as affecting this case, is summarized in
54 Corpus Juris as follows: "Any person capable of
making a contract may bind himself by an offer of re-
ward." Page 778, Sec. 7. "The general rule is that
when a reward is offered to the public, as most rewards
are, it may be accepted by anyone who, under its terms
and conditions, performs the services required ......
Page 785, Sec. 28. "An offer may be made by an agent
of the offeror. The offer must be the authorized act of
the party on whose behalf it purports to be made."
Page 779, Sec. 8. "An offer of a reward ...... may be
made by any advertisement or other statement publicly
proclaimed ...... or by handbills." Page 781, Sec.
13. "Where a reward is offered for the apprehension
or arrest of a criminal, that person is generally held
entitled to the reward who furnishes information lead-
ing directly to the arrest or causes the arrest to be
made by an officer, or by his own agent, or other per-
son; a personal arrest by claimant not being necessary."
Page 793, Sec. 48.

The burden of proof of the offer and publication
thereof was on the plaintiff. The two items of publi-
cation, the handbill and the news item, are the only
evidence by plaintiff of an offer of reward by defend-
ants. There is no evidence that the publication of either
of these notices had been authorized by the Braum
Brothers or either of them, and no direct evidence that
either brother had made such offer. The burgess whose
name appeared on the hand-bill derived no authority
from Braum Brothers, and the constable, Valenson, did
not testify, and neither of them were shown to have any
relation of agency with these defendants, and no other
testimony was produced explaining how said notice

came to be printed and put into circulation so far as relates to Braum Brothers. The news item states an offer by a brother of the murdered men without designating which brother or giving his name, and the handbill states an offer by Braum Brothers in their partnership capacity and not as individuals, in which capacity they are sued, and no evidence was offered by plaintiff disclosing any action in this respect by Braum Brothers as partners in a matter within the scope of a business partnership. The only thing disclosed by plaintiff's testimony in relation to the offer is that they had knowledge of the publication of the news item and the hand-bill mentioning the name of Braum Brothers. There is not a scintilla of evidence alleging or tending to establish the Braum Brothers' connection, directly or indirectly, with the printing or distribution of said printed offers. All contact with Braum Brothers in relation thereto occurred *after* the arrest. Both William and Edward Braum testified that they had made no offer, written or oral; that they had not authorized the publication of the printed hand-bill; that they had not acquiesced prior to the arrest in the offer as set forth in the hand-bill and that they had not after the arrest at any time affirmed or ratified the offer. The only evidence presented by the plaintiff as to authorization of an offer on the part of Edward and William Braum is that given by the plaintiff, Hileman, as corroborated by one Clyde B. Cope, a witness on his behalf. The material part is as follows: James P. Hileman, as to Edward Braum: "Q. Will you stand up, Mr. Braum? Is that Mr. Edward Braum? A. Yes. Q. Where did you talk with him? A. I talked with him at his home. Q. Who was with you? A. Mr. Clyde Cope, he was with me at the time. ...... Q. Did you discuss the reward with Mr. Braum? A. I did. Q. What did he say? A. He said, 'I am very glad that those fellows are caught. If I had known they were down in Elizabeth

this morning, they wouldn't go into court, I would have killed them myself.' Q. Did you discuss anything about collecting the reward? A. I didn't have to. He said they would take it into court before the officers would ever get it; because the officers were to blame for his brother being killed, if they had been on duty there would have been no murder."

\* \* \* \* \* \* \* \*

As to William Braum: "Did you go over to see him? A. Yes. Q. For what purpose? A. About the reward, what they were going to do about it. Q. What Mr. Braum is this? A. The first Mr. Braum was Edward Braum. Q. Which is the one you are referring to now? A. That is the gentleman right here (indicating). Q. The fourth gentleman sitting there (indicating)? A. Yes. Q. What is his name? A. William Braum. Q. What conversation did you have with him? A. I went over and talked to him about the reward, whether they were going to pay it, what they were going to do about it. He said it was entirely up to his brother. He said his brother would handle that. Q. Did he mention whether you were entitled to it? A. He did not say I was not. By the Court: Answer the question. Q. (Question read.) A. He did not. Q. Did you discuss it any further with him? A. I told him if we did not get it settled, I was going to have to sue. Q. What answer did he make? A. He said, 'You don't need to bother suing me, everything will be taken care of.' "

Testimony of Clyde B. Cope: "Q. Did you later go to the Braum's house? A. We were at the Braum's house first, you see, it was at the Braum's house that they sent out for the burgess. Q. Was Mr. Braum present at that time? A. Yes. Q. Which one? A. Ed, I believe the name was. It has been a long time ago. Q. What did Mr. Braum say? A. Well, Mr. Braum was pretty much upset about the death of his brother, was certainly appreciative what Mr. Hileman

had done and stated, I believe, that another brother and him was going to pay the reward, and I think the amount was $500. Mr. Braum went as far as to state that he would see personally that Mr. Hileman would get the money, he would do all he could. Mr. Braum was appreciative and said he would do all he could do to see that Mr. Hileman would get the reward."

Quoting from the comprehensive opinion by the trial judge, speaking for the court en banc: "There is no direct positive evidence in the case that the defendants, William and Edward Braum, jointly or individually offered the reward. There is positive testimony that no reward was offered or authorized by said defendants. As against said positive testimony there is a mere inference of confirmation after performance. Where a reward is published in the names of defendants who did not authorize it but did not object to or countermand it, there is no estoppel. To make them liable their silence must amount to fraud upon the plaintiff, which requires an intent or implied admission on the part of the defendants. The plaintiff's belief cannot of itself affect the defendants. Hugill v. Kinney, 9 OR 250, 42 Am. R. 801. The offer must be the authorized act of the party on whose behalf it purports to be made. 54 Corpus Juris, Page 779, Sec. 8. The court is of the opinion that the plaintiff failed to prove that William and Edward Braum jointly or individually offered the reward in question or subsequently ratified the offer. For this reason defendants' motion for judgment non obstante veredicto should be granted."

After a careful reading of the testimony we are in entire accord with the conclusion reached. The assignment of error is overruled and judgment affirmed.