## Nasser v. County of Lackawanna

*Lawrence A. Durkin,* for plaintiff.
*James Ligi,* for County of Lackawanna.
*Michael Donohoe,* for Western Instruments.
*Ty Welles,* for Northeastern Bank.
*Carmen Minora, Joseph P. McGowan,* for trustee of fund.
*David Reedy,* for Eugene J. Peters.

MUNLEY, *J.* July 18, 1980 — This case was tried non-jury by agreement of the parties and it results from a heinous and bizarre crime which took place in our community some years ago.

The facts have been stipulated by the parties with the exception of defendant Peters, and essentially recite that each of the named defendants offered certain monies to the public at large in return for the providing of information leading to the apprehension and conviction of the person or persons responsible for this tragedy, the abduction and murder of two young boys on or shortly after November 1, 1973. One William Wright was subsequently apprehended and convicted of the abduction and murders. No one other than plaintiff has made a claim upon the various reward funds to date, which total nearly $31,000, and none of the funds have made any payments to any person in accordance with the terms of the aforesaid offer.[1]

---

1. The various funds were established between November 5-13, 1973.

Plaintiff Thomas Nasser, was a student at the time of the abduction and murders. He was hitchhiking on Interstate Route 81 in the vicinity of Scranton on October 26, 1973, and was picked up by a white male and was driven north on I-81 to the vicinity of the Hartford exit. Somewhere along I-81 between the point where Nasser was originally picked up and the Hartford exit, the driver pulled over to the side of the road and made certain lewd and offensive remarks or solicitations to plaintiff and then pointed a small caliber automatic handgun at him.[2] Plaintiff subsequently fled from the car and immediately provided information regarding this incident to the Pennsylvania State Police at the Gibson Barracks substation. This information was placed into report form and forwarded from the substation to Troop R Headquarters located in Dunmore, where it was subsequently recognized as being significant in respect to the two murders. From Dunmore it was forwarded to Troop P Headquarters in Wyoming because Troop P was handling the investigation into the murders concurrently and in cooperation with the Scranton Police Department.[3] At that time, a criminal investigator from Troop R in Dunmore was assigned to follow up plaintiff's report. As a result of the followup investigation, plaintiff was able to positively identify Wright as the driver of the automobile. This identification came on or about December 8, 1973. Ten days later, on December 18, 1973, a detail of officers from the Pennsylvania State Police and the Scranton Police

---

2. The young boys were murdered with a .25 caliber weapon.

3. The bodies were found in Wyoming County, which falls under the jurisdiction of Troop P in Wyoming, Luzerne County.

Department's Detective Bureau confronted William Wright, who was by then in custody on unrelated charges, with a number of items of circumstantial evidence which linked him to the murders of the two boys. These included a ballistic report which matched the bullets which killed the young boys with slugs which were fired from a gun belonging to Wright; a religious medal belonging to one of the boys which was found in a van driven by Wright; and the incident involving this plaintiff. Wright confessed to the murders and to the incident involving plaintiff at that time, and was charged with murder the next day. Wright later entered a plea of guilty to the charges of murder.

Plaintiff testified without contradiction that he was aware of the reward offer at the time of the follow-up State Police investigation, but that the reward was not the sole reason for providing the information to the State Police. The information was provided because he was afraid of Wright and wished to cooperate with the police in Wright's apprehension regarding the indecent assault. He was apparently unaware, at the time of the investigation, that Wright was a suspect in the murders. Plaintiff was never called to testify at any stage of the criminal proceedings, although he was available to do so and had been subpoenaed.[4]

The burden of proving a reward offer and publication thereof is on plaintiff, Hileman v. Borough of West Elizabeth Council, et al, 118 Pa. Super. 275 179 A.2d 786, (1935). The general rule is that when a reward is offered to the public it may be accepted by anyone who, under its terms and conditions, per-

---

4. There is some question as to whether his testimony would have been relevant in the trial for abduction and murder.

forms the services required, Hileman, supra. Where a reward is offered for information leading to the arrest and conviction of a criminal, that person is entitled to it who gives the information which is the effective or proximate means of securing the desired arrest and conviction, Hennig v. Glen Alden Coal Co., 117 Pa. Super. 307, 178 A.2d 309, (1935), a personal arrest or physical intervention by the claimant not being necessary, Hileman, supra. Thus, one who is an active and efficient cause in securing the arrest of a suspected criminal is entitled to the reward, Hennig, supra. It is not necessary, in order to entitle one to an award, that he should have testified to any matter concerning the case, Rinehart v. City of Lancaster, 6 Atl. 91 (Pa. 1886). It is also not necessary for claimant to be aware of the terms or existence of the reward, and if the claimant has performed the designated act, regardless of his knowledge or motive, he is entitled to claim the reward, Cummings v. Gann, 52 Pa. 484 (1866); Oldfield v. City of Reading, 1 Berks 141 (1908). In this respect Pennsylvania law differs from the general rule, see 77 C. J. S. Rewards §32; 67 Am Jur 2d Rewards §17. The apparent rationale is that published offers of a reward for some desired action are nearly always offers of a unilateral contract in which the offeror makes a promise to pay in exchange for which he asks for either action or forebearance as acceptance, not for a promise to act or to forebear. Since the offeror can limit the power of acceptance exactly as he sees fit, the traditional requirements of mutuality and acceptance are both satisfied by the performance of the act, see generally, 1 Corbin on Contracts §64.

The law says that where plaintiff is one of a number of claimants who are entitled to claim a reward, the award should be divided among those giving in-

formation in proportion to the value of the information furnished and services rendered, People's Trust Co. v. Davis, et al, 5 D. & C. 431 (1924); see also 1 Corbin §64. On the other hand, mere assistance in the apprehension of an offender is not enough, and one who is but an instrument in the hands of others and does not materially contribute to the result is not entitled to recover the reward, Rinehart, supra. In Pennsylvania, a municipal police officer may properly claim a public reward for services performed in the course of his office or duties as a policeman, 53 P. S. §633.[5] However, we have found no statutory authority which would permit a State Police officer to claim a public reward.

A verdict and a plea of guilty are a conviction as that term is understood for purposes of obtaining a reward, Wilmoth v. Hensel, 151 Pa. 200 (1892).

We have no doubt, after carefully reviewing the testimony, that this plaintiff furnished information which proved to be a significant link in the chain of circumstantial evidence. We also have no doubt that the Scranton Police Department had independently developed leads and discovered substantial circumstantial evidence which conclusively linked William Wright to the abduction and murders. Obviously, although this plaintiff's contribution was significant, it was not the exclusive active and efficient cause in securing the apprehension and conviction. It was one among several pieces of information utilized by the police in obtaining a confession. Therefore, he would normally be entitled to a pro-rated share of the reward under Pennsylvania law. Here, however, the parties have indicated that the applicable statute

---

5. In this respect Pennsylvania law apparently again differs from the general rule, but cf. Smith v. Whildin, 10 Pa. 39 (1848).

of limitations has run and that no future claims may be made against the fund. Even assuming that the statute of limitations has, in fact, expired,[6] we cannot agree.

The defense of an expired statute of limitations is an affirmative defense which must be raised by way of new matter, Rule 1030. Failure to raise the defense waives it, Goodrich-Amram 2d §1030:1.3 and cases cited.

Thus, it is conceivable that other claims against the fund may be made and honored if no appropriate defense is raised. The appropriate procedure in such matters as this, should have been, in our opinion, for the trustees or offerors of the various funds to pay the funds into court and interplead all claimants. This was the procedure followed by the court in Oldfield v. City of Reading, supra, and People's Trust Co. v. Davis, et al, supra, and results in the cutting off of all potential claims against the fund as of a date certain, see 1 Corbin on Contracts §64.

Where, as here, one potential claimant among several elects to proceed in assumpsit against the funds, he stands in no better position than any other multiple litigant who claims against a fund under a contract theory. He can recover only so much of the fund as the proofs show is his entitlement, he cannot claim the whole because no one else has yet claimed it. We find by the preponderance of the evidence, that plaintiff contributed information which substantially corroborated other leads produced by the investigating police agencies and tended to establish a pattern of illicit activity by William Wright, that this information constituted an active and efficient cause in securing the arrest and conviction of

6. See §25(a) of Act of July 9, 1976, P. L. 586, No. 142. Defendant was convicted on December 18, 1974.

Wright, and based on the evidence presented it is our opinion that this evidence contributed 50 percent proportionally toward the ultimate arrest and conviction of the murderer of these young boys.

Accordingly, plaintiff Thomas Nasser is entitled to claim one-half of the existing proceeds of all the various funds[7] and we shall enter an appropriate judgment in favor of plaintiff and against all defendants.

We express no opinion as to the proper distribution of the unclaimed balance of the fund, or to the entitlement of this plaintiff to reclaim any or all of the proceeds in any subsequent action based upon a distribution of the unpaid balance.[8]

## ORDER

Now, this July 18, 1980, judgment is entered in favor of plaintiff and against each of the named defendants as follows:

| | |
|---|---|
| County of Lackawanna | $2,500 |
| Weston Instruments | 1,500 |
| Northeastern Bank & Trust Co. | 3,150 |
| Trustee of Freach-Keen Reward Fund | 7,500 |
| Eugene J. Peters | 500 |

Each party to bear its own costs.

---

7. Defendant Peters claims that there was no proof of a reward offer as to him. A review of the record shows that at the close of plaintiff's case a motion to admit the pleadings into evidence was granted. The pleadings contain admissions by defendant Peters sufficient to make out plaintiff's burden of proving a reward offer.

8. See generally, Annotation: Knowledge of Reward as condition of Right Thereto, 86 ALR 3d 1142, at 1152, for a discussion of the conflicting Pennsylvania Case law in the area of public rewards.