No: 50.—DUDLEY L. SIMMONS, plaintiff in error, *vs*. THE STATE
OF GEORGIA, defendant.

[1.] In an indictment against a free ·white ·person, under the Act of 1840, for
being accessary after the fact, in the receipt of stolen goods, which charges
that a negro man slave, Bob, was the principal felon, and stole the goods:
*Held*, that, in order to convict the defendant, the State must prove that Bob
stole the goods.    And, that in all cases where a person is charged· with being
accessary after the fact, the guilt of the principal must be proved.

Indictment for receiving stolen goods from a negro.    Tried
before Hon. JAMES A. MERRIWETHER, in Putnam Superior Court,
March Term, 1848.

The plaintiff in error, at the March Term, 1848, of Putnam
Superior Court, was put upon his trial under an indictment for
" receiving stolen goods from a slave."

It was proven by Donaldson Prichard that the watch was sto-
len from him on the night of 2d Dec. 1843.    A negro, Bob, was
in the house during the day before, and saw the watch hanging
up in the room occupied by witness and his mother; from which
circumstance he was induced to have the negro arrested, who
was tried and acquitted by the magistrates.    The witness heard
no one come in the house that night, but heard some one go out.
Heard nothing of the watch until the Spring of 1844, when he
took out a warrant for defendant and had him arrested by Mr.
Wynne, the officer.    Defendant refused to let witness or the of-
ficer come in his house.    Witness told defendant he understood
he had the watch, which he denied, or that he knew anything
about it.    He also denied telling Mr. Johnson, that he won it
from witness.    After a while, he came out, and was arrested, and
they all went to Mr. Johnson's.    Defendant called Johnson out,
and wished to have a conversation with him, which Johnson re-
fused, unless in the presence of a third person.    Mr. Horton,
Johnson, and defendant had a conversation together.    Witness
never gamed with defendant in the year 1843.

It was proven by Jos. Johnson, that defendant told him, previ-
ous to the arrest, that the watch was in his possession, or had
been ,and said he had won it, by gaming, from Prichard.    In the
conversation with Mr. Horton, and witness, defendant stated

where the watch was, and said he would go and get it, and deliver it up to Horton; said it was at Warrenton, and that he carried it there, and left it. When defendant said he won it, the conversation was about the arrest of the negro. Defendant said, if Prichard did not stop what he was at, he would let the cat out of the wallet. He said it of his own accord, and said also, that Prichard requested him not to trade the watch in Putnam, or Hancock county. Defendant gave as his reason for denying ever telling the witness these things, that he wanted to avoid a clash and clamor in the community, and to save the reputations of both of them.

WILKINS J. HORTON proved that the watch was his, corroborated the testimony of Johnson and Prichard, went with defendant to Warrenton, and got his watch. The letters on the watch originally, " E. A. L." were erased. Watch worth $40 or $50. While going to Johnson's, defendant said to witness he won the watch from Prichard.

PRESLEY E. PRICHARD was at his brother's the 1st Dec. 1843, and saw the watch hanging up in the room.

ROBERT J. WYNN corroborated the testimony of the other witnesses, as to the arrest.

DONALDSON PRICHARD, recalled, swore that the negro, Bob, made a fire in his room the day the watch was stolen. The negro who usually made the fire was sick. Witness never told William Simmons, Sr., nor Asa Simmons, that he let the defendant have the watch.

For the defendant.

ASA SIMMONS swore that D. Prichard said, in Sept. 1844, that he had certified that he let the defendant have the watch. The certificate was put in writing some 4 or 5 days after he first certified. At the time he first said, " I certify," he was sober; when put in writing, he was pretty drunk. Witness wrote the certificate.

WM. LITTLE saw defendant and Prichard playing cards in the fall of 1844, in a tent at the camp-ground.

ASA SIMMONS, re-examined—proved the paper offered in evidence. Defendant explained the paper to Prichard, who signed it, and said he would sign any paper to clear defendant of the watch scrape, and would sign Jeff Wynne's death warrant.

The paper was as follows:

" I do certify to the citizens of Putnam county, that Dudley J. Simmons did get the watch from me honestly.   Sept. 8th, 1844.
    Signed,    D. PRICHARD."

WM. SIMMONS, son of defendant, corroborated the testimony of Asa Simmons.

For the State :

JAS. F. TUCKER, sworn—the signature to the paper is not in D. Prichard's handwriting.   Has seen him write when drunk.

ROBT. LADD, CHRISTOPHER BUSTIN, and JOHN EDMONDSON swore to the same effect.

JOS. JOHNSON, re-examined—was requested by defendant to go to his house, to hear Prichard make some acknowledgements.   He went.   Defendant handed Prichard the paper, who looked at it, and said there was one letter on it that looked like one he usually made, but if he signed it, he did not know it, and " you know you did not get the watch from me."   Defendant made no reply.

The Court charged the Jury that it was necessary for them to be satisfied beyond a reasonable doubt : 1st. That the defendant received the watch.   2d. That he received it from the negro boy Bob.   3d. That the watch had been stolen, and 4th. That when defendant received it from the slave, Bob, he knew it to have been stolen from Prichard.

That the guilt or innocence of the defendant was not affected by the acquittal of Bob before the magistrates.   That the offence is completed, whether the property was stolen by Bob, or some other negro, or a white person.   That the person of the thief was immaterial.   That it was not necessary to show either that Bob had been convicted, or that Bob, the principal thief, cannot be taken, so as to be prosecuted.

To all of which the defendant below excepted.

The Jury found the defendant guilty, whereupon defendant moved for a new trial.

1st. That the Jury found without evidence in this : that there was no evidence from which a legal presumption could be raised that the watch in controversy was stolen by the negro, Bob, nor was there any evidence that defendant received or bought said watch from Bob, or any other negro, nor was there any other ev-

idence from which the Jury could infer a guilty knowledge on the part of the defendant.

2d. That the verdict was without, and contrary to evidence. Which motion was overruled by the Court, to which decision defendant excepted, and assigned the same as error.

Ashurst & Foster, for plaintiff in error.

Sol. Genl. Bartlett, and Cone, for defendant.

Foster, for plaintiff in error, contended:

That defendant, if guilty at all, is guilty as an accessory after the fact. *Acts of* 1840, *page* 140.

An accessory after the fact cannot be tried until the principal felon be convicted. 1 *Russel on Crimes*, 34, *to* 40. *Penal Code, Prince*, 640, 1. 2 *Bailey*, 34, 49. *Roscoe's Criminal Evidence, top page*, 721.

Cone, for defendant in error.

1. The Act of 1840, under which the plaintiff is convicted, creates a new original offence, and does not require the previous conviction of the slave, or free person of color. 1 *Russell & Ryan*, 372.

2. It is not necessary, in order to constitute the offence, that the property should have been stolen by the slave, or free person of color, from whom it is received.

3. It is not necessary, in order to constitute the offence, that the property should have been stolen by a slave or free person of color.

4. The offence is complete if the prisoner receive the watch from a negro, knowing that it was stolen.

5. This Court will not grant a new trial in a criminal case, unless some principle of law has been clearly violated, or where there is manifestly no evidence to sustain the verdict. 1 *Kelly*, 620.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] We have two Penal Statutes in relation to the receiving

Simmons *vs*. The State of Georgia.

of stolen goods—the 28th Sect. of the 8th Division of the Penal Code, and the Act of 1840. The former is in the following words : " If *any person* shall buy or receive any goods, money, chattels, or other effects, that shall have been stolen or feloniously taken from another, knowing the same to be stolen or feloniously taken, such person shall be taken and deemed an accessory after the fact, and shall receive and suffer the same punishment as would be inflicted on the person convicted of having stolen or feloniously taken the said goods, money, chattels or other effects so bought or received." *Prince*, 640. The Act of 1840 is as follows : " If any *free white person or persons*, shall buy or receive any money, goods, chattels or other effects from *any negro or free person of color*, that has or have been stolen or feloniously taken, knowing the same to have been so stolen or feloniously taken— such person or persons so offending, shall be taken and deemed to be accessory or accessories after the fact, and being convicted thereof, shall receive and suffer the same punishment as would have been inflicted on such person or persons, had he or they been convicted of stealing or feloniously taking the same." *Hotchkiss*, 734. Both these statutes declare that the offender shall be taken and deemed *an accessory after the fact*. That is the legal character given to the offence in both acts—and all the incidents which attach to that offence, attach to the crime in them described. And the same pleadings and proof which are required to convict, are required by each of them. The Penal Code is general in the 28th Sect. 8th Division above quoted.

It applies to *any person*, whether slave, citizen, or free person of color, whilst the Act of 1840 applies only to *free white persons.* The code embraces the receiving of stolen goods, &c. from *any person* whatever, whether slave, free person of color, or free white person, knowing them to be stolen by *any person*; whilst the Act of 1840 is confined to the receiving of stolen goods, &c. from *a negro or free person of color*, knowing them to be stolen. The punishment which the code prescribes, is that which by law is due to the principal offender; and that which the Act of 1840 prescribes, is the same which the law would inflict upon the accessory, were he convicted of the fact to which he is accessory. I see no difference between the Penal Code and the Act of 1840, so far as the cases to which it extends are concerned, except in the punishment. That is to say, a free white person who

receives goods from a negro or free person of color, knowing them to be stolen, is guilty of the same offence, under the Act of 1840, that any person would be guilty of under the Penal Code. The punishment only is different. In either case, the offence is *being accessory after the fact.* The Act of 1840 was no doubt passed for the purpose of altering the punishment in the cases to which it applies, and for no other purpose. And there was a very urgent necessity for such an act. For by the Penal Code, a white man convicted of being accessory after a fact committed by a negro, was liable to a severer punishment than he would be, if he were himself the principal felon; and to a punishment wholly disproportioned to the offence. For example, take the case made in this record. A white man is charged with being accessory after the fact of larceny, by privately stealing from a house, by a negro man slave, Bob. Now, the punishment prescribed for this offence, when committed by a slave, is left to the discretion of the Court before which he is tried, limited only, so as not to extend to life or limb. *Prince,* 792. The same offence when committed by a free white person, is punished by confinement in the Penitentiary, for a term not less than two, nor more than five years. *Prince,* 630. So, if the accessory after the fact in this case is finally convicted, the Penal Code would have pun ished him at the discretion of the Court, limited alone so as to protect life and limb. *Burglary,* when committed by a slave, is a capital offence. A citizen, convicted of being accessory after the fact of Burglary, committed by a slave, would, by the Penal Code, be hung. Whereas, if convicted of burglary himself, he would be punished only by imprisonment in the penitentiary for a term varying from three to seven years. *Prince,* 628. The chief object of the Act of 1840, I repeat, was to correct this statutory inconsistency and absurdity. We are to consider the 28th Sect. 8th Division of the Penal Code, and as that act, *in pari materia.* The extent to which it modifies the Code is as stated, and no more. This indictment is for receiving stolen goods from a slave named Bob, knowing them to be stolen. The offence charged, is that made by the Act of 1840. And that is the offence of being accessory after the fact of larceny committed by a slave. It is argued for the State, that the Act of 1840 creates a new and original offence, and therefore the pleading and proof may be adapted to the offence as described in the Statute. This was also the

view of it taken by the presiding Judge. In other words, says the counsel, the offence is not that of being accessory after the fact; it is not a derivative, but an original offence, and therefore it is not necessary that the State should prove what, at Common Law, was necessary to convict, and all that was then necessary to conviction. This reasoning became necessary, to maintain the decision of the Court below. That was, that the offence is complete without regard to the person who committed the larceny. That is, it is complete, if the goods were received from any person whatever, knowing them to be stolen or feloniously taken. A consequence of this position was a farther position, that in this case, although the indictment charges that a certain individual slave, Bob, did steal the goods, and that the defendant received them from him, knowing that they were stolen; yet it was not necessary for the State to prove that Bob did, in fact, steal them. In any view of this case, we believe the latter position of the Court is erroneous. We think, as already stated, that the effect of the Act of 1840 is not to repeal or alter the Penal Code, except so far as the punishment is concerned in the cases named. That it does not alter the character of the offence—that remaining as it was. And that the offence defined in the Code is that distinctive one, known to the law, as consisting in being accessory after the fact in the receipt of stolen goods. But suppose the Code had been silent as to this offence, or was in terms repealed by the Act of 1840, the new offence created by that act would be in that event still the same. The defendant would still have to be indicted as an accessory, and the same proof would be necessary to conviction. The Court below held, and very properly, that the State, under this indictment, must prove that the defendant received the goods from the slave, Bob, and that at the time he received them, he knew them to be stolen from the owner. All this the Common Law and the Statute require. The Court erred in charging that it was not necessary to prove, according to the allegations in the indictment, that the individual, Bob, stole the goods.

At Common Law, the accessory could never be *arraigned* before the actual attainder of the principal, and the consequence was, that if that was prevented by his death—his standing mute —challenging peremptorily above the number of jurors allowed by law—by a pardon—or by being admitted to the benefit of clergy, the accessory went free. This evil was remedied by Stat-

ute 1 *Ann Sess.* 2 *Ch.* 9 *S.* 1, which enacted that if for these, or any other cause, the principal was delivered between conviction and attainder, the accessory might still be arraigned, tried and punished. 1 *Chitty's Crim. Laws*, 420. 2 *Inst.* 183, 4. *Cro. Eliz.* 541. 2 *Hale*, 222. *Fost.* 362. *Hawk. b.* 2, *c.* 29, *s.* 41. 4 *Black. C.* 323.

Formerly, in England, the accessory could never be *tried*, without his own consent, before the conviction or outlawry of the principal, unless they were tried together. This was the Common Law rule. *Fost.* 369. 1 *Hale*, 523. *Hawk. b.* 2, *c.* 29, *s.* 36. 4 *Bla. C.* 40. 1 *Chitty's Crim. Law*, 266, 7. And when tried together, both were arraigned together—plead together— and if they both relied upon the general issue, might be tried by the same jury. And in such a case, the jury were charged to inquire, first of the guilt of the principal, and if they thought him innocent, the accessory was, of course to be acquitted. 2 *Inst.* 184. 1 *Hale*, 624. 2 *Hale*, 223. 4 *Hawk. b.* 2, *c.* 29, *s,* 47. 9 *Coke R.* 119. 3 *Hawk. b.* 2, *c.* 29, *s.* 47. *Fost.* 350. 1 *Chitty*, 421. Upon the trial, it was also competent for the accessory to dispute the guilt of the principal, although he had been previously convicted, and thus establish his own innocence. *Fost.* 365, 121. 1 *Leach*, 288. *Hawk. b.* 2, *c.* 29, *s.* 49, *n.* 4. 4 *Black. C.* 324. 1 *Chitty*, 422. Thus it is manifest at Common Law, to convict an accessory, it was necessary to show the guilt of the principal. And so indispensable was the guilt of the principal to the offence of the accessory, that the latter could go behind a judgment of conviction against the former, to show that he was not guilty. The guilt of an accessory is derivative. The maxim applicable to these cases is "*ubi factum nullum ibi fortia nulla.*" If the principal has been so acquitted, as that he might successfully plead *autrefois acquit*, the accessory was not even liable to an arraignment. 4 *Co. Rep.* 43. *Hawk. b.* 2, *c.* 29, *s.* 36. 1 *Chitty*, 420. How far the position last stated would make the acquittal of Bob before the magistrates a good defence for the defendant in this case, may be a matter of some doubt, because of the peculiar character of that trial under our Statutes. He was arrested, tried and discharged. As evidence, we have no doubt it goes a great way to show his innocence, and the consequent innocence of the defendant. We hold, also, that upon this trial, the State might, notwithstanding that discharge, show his guilt. As there was a little, and we must

Simmons *vs.* The State of Georgia.

say very little evidence of Bob's guilt, the whole was properly left to the jury, and their verdict, upon that ground, properly left undisturbed. But to return from this digression. Such were the rules of the Common Law, as to this offence. They were modified in England by statutes. By Statute 1 *Ann,* 2, *c.* 9, *s.* 2, and by Statute 22 *Geo. III. c.* 58, *s.* 1, accessories receiving stolen goods, knowing them to be stolen, were made liable to an indictment for a misdemeanor, and punished, although the principal felon be not convicted. And by still more recent statutes, they are made liable to prosecution and punishment, although the principal has neither been convicted nor prosecuted to outlawry. 1 *Chitty Crim. Law,* 267. By our own Statute they may be prosecuted for a misdemeanor, when the principal thief cannot be taken so as to be prosecuted and convicted. *Prince,* 640.

From all which, I infer that in Georgia, where one is indicted as an accessory after the fact, it is necessary for the State to prove the guilt of the principal, if any one individual is charged, as in this case, to be the principal. Although it is not necessary to show his conviction, in cases where his outlawry is averred and proven; yet in all cases it is necessary to prove to the satisfaction of a Jury, that he is guilty of having stolen the goods. This is an indictment which charges the defendant with the offence of being an accessory, after a larceny committed by a slave, *specially named.* The Court held that it was not necessary to prove that the larceny was committed by that individual; and in *that* we think there was error. Now, we do not deny but that an indictment which charges the principal to be unknown, or to be some evil-disposed person, would be good, and that in such a case, proof of the receipt of the goods, knowledge by the defendant that they were stolen, and proof of the theft by *any person*, would be sufficient. In England, where the principal is known, the averment ought to be according to the truth of the case—that is the general rule; a case where he is unknown, &c. is the exception. 3 *Camp.* 264. 3 *Chit. Crim. Law,* 958, '9. The case before us is not within the exception. The pleading ought to show it to be within the exception. This indictment shows the contrary, for it names the principal felon.

It is a familiar rule of the Law of pleading, that a party is held to prove all material allegations, and even immaterial ones, unless they be wholly impertinent and irrelevant to the cause. In this case the offence charged is not, that the defendant is accessory after a fact committed by a slave or free person of color unknown;

but that he is accessory after a fact committed by a negro man slave, named Bob, the property of one Prichard.    That is the offence to which the defendant is called to answer, and none other, and if convicted at all, that is the only offence of which he can be convicted.    A judgment of acquittal in this case, would protect him, only from a second trial for that offence, as set forth and described in the indictment.    Without proof that the principal is guilty of the fact, the State does not make out the case which she has made, and without it, in the Judgment of the law, as we understand it, the defendant is guiltless of any offence whatever.    1 *Chit. Crim. Law,* 453.    2 *Leach,* 594.    *Doug.* 665—7.    1 *Chit. Plea.* 307.    2 *East,* 452, 502.    4 *Ibid,* 400.    2 *Bla. R.* 1104.    7 *Johns. R.* 321.    3 *Day's R.* 283.    2 *Russ. on Crimes,* 788.    *Ib.* 248.

So let the Judgment of the Court below be reversed.