## Commonwealth *v.* Minnich, Appellant.

*Criminal law—Murder—Accessory—Guilt of principal—Proof— Record of conviction—Words and phrases—"Conviction"—Evidence—Proximity to crime—Threats.*

1. There can be no conviction of one charged as an accessory except as the guilt of the principal be first established.

2. In the separate trial of one charged as an accessory, the same burden rests on the Commonwealth to establish the guilt of the principal as would have rested upon it were the principal himself being tried, and the same measure of proof is required in one case as in the other.

3. The record of the conviction of the principal while not conclusive with respect to the fact of the principal's guilt, is allowed exceptional weight as matter of evidence in that standing alone and unexplained it is sufficient to warrant the conclusion in support of which it was introduced.

4. Technical legal terms are to be taken in the absence of countervailing intent in their established common law significance, and this rule applies with especial force where an ancient and established rule of law is under consideration.

5. The word "conviction" has a popular as well as technical meaning. As popularly used it implies nothing more than a finding of guilty by a jury, but as technically understood it means the ascertainment of the guilt of the accused and judgment thereon

by the court, implying not only a verdict but judgment or sentence thereon.

6. "Record of Conviction" is a common law term and as employed in the rule of law relating to proof of the guilt of a principal, upon the trial of an accessory it must be given its legal and technical meaning, and in order to be admissible the record must show not only the verdict of the jury but the judgment or sentence of the court.

7. On the trial of an indictment charging defendant as an accessory to a murder, the record of the conviction of the principal showing simply that a verdict of guilty was rendered but that no judgment was entered thereon, is not definitive, and its admission is reversible error.

8. In such case evidence was properly admitted to show that at the late hour of night, when the murder was committed defendant was found but a few feet from the place of the crime.

9. On the trial of one indicted as accessory to a murder, threats and all declarations of personal hostility made by the accused are admissible in evidence against him as showing malice intending to show the criminal intent charged.

Argued May 3, 1915. Appeal, No. 17, October T., 1915, by defendant, from judgment of O. & T. Beaver Co., December Sessions, 1913, No. 3, on verdict of guilty of murder of the second degree, in case of Commonwealth of Pennsylvania v. Mike Minnich. Before BROWN, C. J., MESTREZAT, ELKIN, STEWART and FRAZER, JJ. Reversed.

Indictment for murder.    Before HOLT, P. J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the second degree.

The court refused defendant's motion in arrest of judgment and for a new trial.    Defendant appealed.

*Errors assigned* were various assignments of error referred to in the opinion of the Supreme Court.

*Lawrence M. Sebring,* for appellant.

*Louis E. Graham,* District Attorney, for appellee.

OPINION BY MR. JUSTICE STEWART, July 3, 1915:

The appellant, Mike Minnich, was jointly indicted in the Court of Oyer and Terminer of Beaver County with one Harry Green, for the murder of Mary Pupek Stoica. In the indictment Green was charged as principal and Minnich as accessory before the fact. A severance was granted and Green was first tried, his trial resulting in a verdict of guilty of murder of the second degree, returned 22d December, 1913. Four days later, on 26th December, 1913, the trial of Minnich was entered upon, and on the 30th December a verdict of guilty of murder of the second degree was returned against him. A motion in arrest of judgment and for a new trial in his case having been overruled this appeal followed. The assignments of error, forty-six in number, are so unduly multiplied, considering the very limited number of questions involved, as to make it if not impracticable, certainly unprofitable, to give separate consideration to each. In our discussion of the case we shall therefore confine ourselves to the several propositions advanced by counsel for the appellant in his brief of argument. The assignment to which our attention is first directed charges error in the admission of the record of the conviction of Green, to prove his guilt as principal in the crime, against the objection that the record is not definitive inasmuch as it does not show any judgment entered. To this assignment we have given the serious attention it demands.

There can be no conviction of one charged as an accessory except as the guilt of the principal be first established. "The leading doctrine in respect to an accessory is that he follows, like a shadow, his principal. He can neither be guilty of a higher offense than his principal, nor guilty at all, as accessory, unless his principal is guilty." Bishop on Criminal Law, Vol. I, page 611. Therefore, it is that on the separate trial of one charged as an accessory, the same burden rests on the Commonwealth to establish the guilt of the principal as

would have rested upon it were the principal himself being tried, and the same measure of proof is required in one case as in the other. In both the evidence to convict must exclude all reasonable doubt. While on trial of an accessory the Commonwealth is not confined to any one mode of proof of the principal's guilt, the mode generally adopted, not only because most convenient and direct, but because of the effect allowed it in law, is to produce and offer the record of the principal's conviction. As a judicial record it is of course, conclusive of the fact of conviction. While not conclusive with respect to the fact of the principal's guilt, it is, nevertheless, by settled rule of law, allowed exceptional weight as matter of evidence, in that, standing alone and unexplained, it is sufficient to warrant the conclusion in support of which it is introduced; in other words, that it establishes a prima facie case of guilt which continues until the contrary is shown. 2 Starkie on Evidence, 9 Com. v. Knapp, 27 Mass. 477. The sole and exclusive purpose of the offer of the record in the present case was to prove the principal's guilt. How far was it sufficient to this end? If it was such record as the law contemplates under the rule we have stated, then it was not only proper evidence, but its effect was to establish a prima facie case of guilt on part of the principal; if not such record, then it was improperly admitted, and serious error was committed in allowing it evidential force that it was not entitled to. The one significant fact that suggests doubt as to its sufficiency, and upon which appellant's case rests, is, that it does not recite either judgment or sentence on the verdict. Whatever difficulty we may encounter here will be found due to the fact that the word conviction is of equivocal meaning. It has a popular as well as technical meaning. As popularly used it implies nothing more than a finding of guilty by a jury, and this meaning has been allowed it in several of our cases, notably in York County v. Dalhousen, 45 Pa. 372; Wilmoth v. Hensel, 151 Pa. 200; while in others, as technically understood.

it means the ascertainment of the guilt of the accused and judgment thereon by the court, implying not only a verdict but judgment or sentence thereon, as in Smith v. Com., 14 S. & R. 69; Cumberland County v. Holcomb, 36 Pa. 349. The difficulty becomes more apparent than real if we are content to apply the ordinary rules of construction. Technical legal terms are to be taken, in the absence of countervailing intent, in their established common law significance, for the reason that they have a definite meaning which is supposed to have been understood by those who were or ought to have been learned in the law.

"Record of conviction" is a common law term; it follows that it is both legal and technical. Why then shall it not have its legal technical meaning imputed to it when we find it employed in a rule relating to a subject matter as to which it has acquired such meaning? Rules of construction require such meaning to be given technical terms when they appear in enactments, whether civil or criminal in their character, except where a contrary intent is disclosed. "A word which has a settled common law meaning, when used in an act upon the subject matter as to which it has acquired such meaning, is to be so understood. So in dealing with criminal or penal matter, the statute is presumed to use its language with reference to the ascertained meaning of the language of the criminal law. The word steal then implies larceny, the word murder malice aforethought, and the word robbery its technical significance." Endlich on Inter. Sec. 75. The fact that we are here construing a rule of law, and not a statute, affords ground for distinction; but for reasons which will at once occur to the professional mind, the distinction only emphasizes the greater necessity for the application of the rule of interpretation above quoted when, instead of a legislative enactment, it is an ancient and established rule of law that is under consideration. The rule requiring the same measure of proof on the trial of an accessory with re-

spect to the principal's guilt as is required to establish the accessory's guilt, affords reason for resolving the apparent difficulty by the method indicated. If it be essential to show the principal's guilt beyond reasonable doubt, why allow a record that shows nothing more than a verdict of guilty by a jury to measure up to that standard? A verdict of a jury, without more is but the expression of the collective opinion of twelve men which concludes nothing, and supports nothing, except as it is followed by a judgment; and then it is the judgment and not the verdict that marks the conclusion of the issue and gives it efficiency. The present case furnishes an apt illustration. When it was tried it was not known and could not have been foretold what effect was to attach finally to the verdict of guilty in the case against the principal. In view of this element of uncertainty that at· taches to every verdict of guilty, it is hardly to be supposed that it was the purpose of the law to make a simple verdict the evidential equivalent of proof beyond reasonable doubt. The rule of the common law touching this matter is thus stated by Mr. Bishop in his work on Criminal Law, Section 612. "The accessory is so completely, at common law, attached to his principal, that if for any cause, however far from the merits of the case, there is an omission to pass actual sentence on the principal's conviction, called in English law attainder, no judgment can be pronounced against the accessory." The clear implication here is that the record of conviction to show guilt must recite judgment or sentence.

An examination of our cases will show that this court has strictly adhered to the common law meaning of the term conviction, except where such construction would defeat the apparent intention in using it. In all such cases, whether the word appear in legislative enactment or in contract between private persons, the term has been given its popular signification in accordance with settled rules of construction that the intention is to govern. But this indulgence has extended no further.

In Smith v. Com., 14 S. & R. 69, 70, it is said by TILGH-
MAN, C. J.: "When the law speaks of conviction, it means
a judgment and not merely a verdict which in common
parlance is called a conviction." In Buck v. Com., 107
Pa. 486, the defendant was tried as an accessory. To
prove the guilt of the principal the Commonwealth of-
fered the record of his conviction showing a plea of
nolo contendere, but no sentence. The offer was ad-
mitted under objection and the defendant was found
guilty. This court in reversing the judgment said, speak-
ing by Mr. Justice PAXSON (page 490), "That a confes-
sion by the principal is not admissible upon the trial of
the accessory to prove the guilt of the principal, is set-
tled law. What more is the plea of nolo contendere than
a confession? Had judgment been entered upon the plea
the record would have been competent evidence of the
conviction. But there was no judgment; only a plea
which was at best but a qualified admission of guilt, and
which might have been withdrawn the next day. We are
of opinion that the plea was improperly received." In-
stances are not infrequent where it has been sought, but
without success, to apply the rule of technical construc-
tion where the word has been employed in statutes or by
individuals in their contract. These cases are without
bearing in the present contention. We are here not deal-
ing with statutes or contracts of individuals, but with a
rule of the common law, and this distinction must be con-
stantly borne in mind. The contention of the Common-
wealth overlooks it. In York County v. Dalhousen,
supra, a case much relied on by the Commonwealth, the
question was, in what sense, popular or technical was the
word conviction used in the Act of Assembly of March
28, 1814, 6 Sm. L. 228, which provided that in all cases
of conviction the costs should be paid by the party con-
victed, but when the party should be discharged ac-
cording to law without payment of costs, they shall be
paid by the county. It was there held that conviction ap-
plied to the verdict of the jury finding the defendant

guilty, and meant conviction before sentence and judgment. But this was simply applying the general rule which requires that in the construction of statutes, the terms and language thereof are to be taken and understood according to their usual and ordinary signification, as they are generally understood among mankind, unless it should appear from the context and other parts of the statute to have been intended otherwise. School Directors v. Carlisle Bank, 8 Watts. 289; Philadelphia & Erie R. R. Co. & Penna. R. R. Co., v. Catawissa R. R. Co., Western Cent. R. R. Co., & Atlantic & Great Western Ry. Co., of the States of Ohio, N. Y. & Penna., 53 Pa. 20. So too in Wilmoth v. Hensel, 151 Pa. 200. There the action was to recover a reward offered by the defendant for the prosecution and conviction of persons for violating the statutes against bribery and corruption at elections. On the trial plaintiff could show no more than that he had arrested and brought to trial one charged with the offense; that this person was bound over, that he was accordingly indicted and that to the indictment he had pleaded guilty. The record showed that sentence had been suspended, that the prisoner had been allowed to go without day, and that no punishment had ever been imposed. The plaintiff notwithstanding, recovered in the action. On appeal it was held by this court that in conditioning the reward upon conviction of the party charged, the word conviction was used in its popular sense which meant no more than a verdict of guilty. And so in every case where the popular meaning of the word has been allowed to prevail it will be found that the decision has rested on the manifest understanding of the party employing it, whether it be the legislature or a private individual. The recent case of Com. v. McDermitt, 224 Pa. 362, in which the opinion is written by the present chief justice, is nothing to the contrary. What that case decides is that where one is charged in the indictment with a prior conviction for a similar offense, and the statute makes his alleged repetition of the offense

a distinct offense for which severer penalties are to be imposed, the word conviction must be given its strict legal meaning of judgment on a plea or verdict of guilty. Neither directly nor by implication is it anywhere in the opinion suggested that a principal's guilt can be established on trial of one charged as an accessory by a record which shows nothing more than a verdict of guilty returned by a jury.

For the reasons we have thus stated the assignment of error which has regard to this feature of the case must be sustained and the judgment reversed.

Since the case must go back for another trial it is necessary to rule upon the remaining questions. The supposed errors to which our attention has been directed in the argument relate to the admission of evidence. First, evidence offered for the purpose of showing that at the late hour of night when the offense was said to have been committed, between 12 and 1 a. m. defendant was found but a few feet from the place of the crime. This assignment calls for no consideration. The fact that the defendant offered evidence which to the mind of his counsel was a satisfactory explanation consistent with innocence of his being where he was, has nothing to do with the admissibility of the evidence. The effect was for the jury. Its admissibility is too evident to call for discussion. Second, evidence of threats made by the defendant. With respect to this latter it need only be said that threats and all declarations of personal hostility are admissible in evidence as showing malice and tending to show the criminal intent charged. To this end the evidence in the case was directed and it was properly admitted.

The judgment is reversed, and it is now ordered that the record be remanded to the Court of Oyer and Terminer of Beaver County, together with this opinion containing the cause of such reversal, for further proceedings according to law.