# LON ALEC LEWIS *v.* STATE OF MARYLAND

[No. 104, September Term, 1978.]

*Decided August 27, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE and DAVIDSON, JJ., and ALAN M. WILNER, Associate Judge of the Court of Special Appeals, specially assigned.

*Thomas J. Saunders* and *Bradford C. Peabody, Assistant Public Defenders,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The defendant in this criminal case, Lon Alec Lewis, was convicted as an accessory before the fact to the first degree murder of his wife and the second degree murder of his child. He was also convicted on two counts of solicitation to murder and three counts of conspiracy to murder. Several significant legal issues were raised on his appeal to the Court of Special Appeals. We issued a writ of certiorari prior to any proceedings in the intermediate appellate court.

The prosecution's evidence showed that the defendant Lewis arrived at an agreement with a friend, Gene Meyer, whereby Meyer would kill the defendant's wife and infant daughter in exchange for a payment of $3,000.00. In addition, Lewis agreed to kill Meyer's wife and was to be compensated for that act. On September 23, 1977, Lewis returned home in the evening to find the dead bodies of his wife and daughter lying in a pool of blood on the kitchen floor. The police were summoned to the home, and an investigation commenced.

As the result of a search of the defendant's home several days after the crimes, a poem was found, suggesting to the police the possibility of the defendant's involvement in the killings. Upon intensive questioning, the defendant ultimately confessed to his role in the murders. After his conviction by a jury in the Circuit Court for Prince George's County, Lewis was sentenced to life imprisonment on the first degree murder count, a consecutive thirty-year term on the second degree murder conviction, concurrent twenty-year terms on the solicitation to murder counts, and a concurrent ten-year term on each of the conspiracy charges.

The defendant's principal contentions on appeal are that:

(1) An accessory before the fact cannot be tried prior to the conviction and sentencing of the principal.

(2) A delay in presentment to a judicial officer following arrest violated Maryland District Rule 723 a.

(3) The State violated his Fourth Amendment rights in searching his house without obtaining either valid consent or a warrant.

(4) He was coerced into confessing in violation of his

Fifth Amendment right against compulsory self-incrimination.

(5) Under both double jeopardy principles and Maryland merger law, one cannot be convicted and sentenced for solicitation to murder where he is also convicted and sentenced on a charge of being an accessory before the fact to the same murder.

(6) An instruction to the jury, directing it that all of the other instructions are only advisory, and not mandatory, was erroneous under the circumstances here.

### I.

At the trial, in the course of his argument upon a motion for judgment of acquittal, Lewis's counsel contended that the State had failed to adduce proof that "there was a guilty principal . . . and that he was convicted. This is an essential element of accessory before the fact." The prosecuting attorney conceded that "technically we do not have a conviction as to Mr. Meyer. He is not truly convicted until he is sentenced. And then it becomes a conviction." There was no formal proof during Lewis's trial that the principal in the two murders involved, Gene Meyer, had been tried. However, it appears to be undisputed that he was tried and verdicts of guilty had been rendered prior to Lewis's trial. On the other hand, it is clear that the principal was not sentenced until after Lewis was tried and found guilty.

In this Court, Lewis reiterates his contention that his two murder convictions were improper because, under the common law rule in force in this State, an accessory cannot be tried before a final judgment in the principal's case, which means a verdict of guilty and sentence upon that verdict.

The State, at the outset, concedes that the defendant correctly sets forth the strict common law requirement concerning the trial of accessories. Referring to the "hypertechnical nature of the common-law requirement" and asserting that the common law rules on accessoryship "have become legal anachronisms which should be brought into line

with the realities of the administration of criminal justice today," the State advances three alternate positions. Broadly, it argues that we should abolish the distinction between principals and accessories before the fact and "concomitantly dispense with the hypertechnical rules incident thereto." As a middle ground, the State contends that mere evidence of the principal's guilt should be sufficient to permit the conviction of the accessory. The State's narrow position is that, at the very least, we should hold that a verdict of guilty returned against a principal is all that is needed before an accessory can be tried, and that a final judgment in the principal's trial is not required.

Just last year, we pointed out in *State v. Ward,* 284 Md. 189, 191, 396 A.2d 1041 (1978): "Maryland is one of the few, if not the only state, which has retained this doctrine [of accessoryship applicable to felonies] in virtually the same form as it existed at the time of William Blackstone in the 18th century, and it represents the law of Maryland at the present time." We further observed in *Ward* that England and *every American jurisdiction except Maryland* had abolished or modified the doctrine by legislative act, 284 Md. at 191 n. 3. Apparently no jurisdiction has done so by judicial decision absent any type of legislative basis.

Under orthodox common law principles, not modified by statute, it is clear that a final judgment of conviction in the principal's case, which includes sentence of the principal, is an absolute prerequisite to trial of an accessory. In fact, an accessory could not even be arraigned until the attainder of the principal, which followed the final judgment.[1] As stated in Blackstone, *Commentaries on the Law of England,* p. 232 (1st ed. 1769), quoted by Judge Orth for the court in *State v. Magliano,* 7 Md. App. 286, 296, 255 A.2d 470 (1969):

" 'By the old common law the accessary could not be arraigned till the principal was attainted, unless

1. Attainder or attaint at common law was the extinction of one's civil liberties and capacities that occurred by operation of law after the imposition of sentence upon conviction for a felony, Black's Law Dictionary, p. 162 (rev. 4th ed. 1968); Ex parte Garland, 71 U.S. (4 Wall.) 333, 387, 18 L. Ed. 366 (1866) (dissenting opinion); Fidelity & Deposit Co. of Maryland v. Boundy, 236 Mo. App. 656, 158 S.W.2d 243, 246 (1942); Caldwell v. Hill, 179 Ga. 417, 428, 176 S.E. 381 (1934).

he chose it: for he might waive the benefit of the law; and therefore principal and accessary might, and may still, be arraigned and plead, and also be tried together. But otherwise, if the principal had never been indicted at all, and stood mute, had challenged above thirty-five jurors peremptorily, had claimed the benefit of clergy, had obtained a pardon, or had died before attainder, the accessary in any of these cases could not be arraigned; for *non constitit* whether any felony was committed or no, till the principal was attainted; . . .' "

And as set forth in 1 *Hale's Pleas of the Crown,* pp. 623-624 (1st American ed. 1847):

"If *A. B.* and *C.* be indicted as principals, and *D.* is indicted as accessary to them all, *D.* shall not be arraigned till all the principals be attaint or outlawed . . . .

\* \* \*

"If the principal be attainted and hath his clergy, or be pardoned after attainder, the accessary shall be put to answer; but if the principal be only convict and hath his clergy, or be pardoned, or stand mute, or die in prison before judgment . . . the accessary shall not be put to answer, for the principal was never attainted . . . ."

*See also* 1 J.Bishop, *Bishop on Criminal Law,* p. 483 (9th ed. 1923); 3 J.Bishop, *Bishop's New Criminal Procedure,* pp. 1228-1229 (2d ed. 1906); 1 *Encyclopaedia of the Laws of England,* p. 84 (2d ed. 1906); Foster, *A Report of Some Proceedings,* 362-363 (1762); 1 E.McClain, *The Criminal Law,* p. 180 (1897); R.Perkins, *Perkins on Criminal Law,* p. 673 (2d ed. 1969); 2 J.F.Stephen, *A History of the Criminal Law of England,* p. 235 (1883).

Courts also have recognized the common law principle that an accessory cannot be tried until final judgment of conviction in the principal's case. *E.g., Daughtrey v. State,* 46 Fla. 109,

35 So. 397, 398 (1903); *Ex-parte Mack Bowen, Habeas Corpus,* 25 Fla. 214, 221 (1889); *Simmons v. Georgia,* 4 Ga. 465, 471 (1848); *Baron v. The People,* 1 Parker Cr. R. 246, 250 (N.Y. 1851); *State v. Duncan,* 28 N.C. (6 Ired.) 98, 104-105 (1845); *Commonwealth v. Minnich,* 250 Pa. 363, 95 A. 565, 567 (1915); *State v. Sims,* 18 S.C.L. (2 Bailey) 29, 31 (1830); *Kingsbury v. State,* 37 Tex. Crim. 259, 266, 39 S.W. 365 (1897). *Contra, Jones v. The People,* 20 Hun (N.Y. Sup. Ct.) 545 (1880).

In *State v. Duncan, supra,* the defendant was indicted as an accessory before the fact to murder. Prior to the trial of the defendant, the principal had been tried and found guilty by a jury, but had not yet been sentenced. At the accessory's trial, the conviction of the principal was admitted into evidence over the defendant's objection that such evidence was improper because judgment had not been entered on the verdict. On appeal the Supreme Court of North Carolina agreed with this position and reversed the conviction, declaring: "Where the trials [of a principal and accessory] are separate, the attainder of the principal must precede not only the sentence of the accessory, but his trial." As a basis for its holding the court quoted Lord Coke, 4 Rep. 43:

> " 'That, if principal and accessory are, and the principal pardoned, or has his clergy, the accessory cannot be arraigned, for the maxim of the law is — *ubi factum nullum, ibi fortia nulla; et ubi non est principalis, non potest esse accessorius.* Then, before it appears there is a principal, one cannot be charged as accessory. But none can be called principal, before he is so proved and *adjudged* by the law, and *that* ought to be *by judgment* upon verdict or confession, or by outlawry; for it is not sufficient that, in *rei veritate,* there was a principal, unless it so appears by judgment of the law; and that is the reason that, when the principal is pardoned, or takes his clergy, before judgment, the accessory shall never be arraigned; for it doth not appear, *by judgment* of law, that he is principal, and the acceptance of the pardon or praying of the clergy, is an argument, but no judgment in law, that he is guilty. But if the

principal, after attainder, is pardoned, or has his clergy, then the accessory shall be arraigned, because it appears judicially that he was principal.' " 28 N.C. at 103-104.

Expressing its displeasure with the state of the law, the Supreme Court of North Carolina noted that other jurisdictions had enacted legislation to avoid this impediment to justice. However, the court refused to judicially change the law, declaring (28 N.C. at 106):

"Probably similar reforms may be found by the Legislature, to be necessary in our law . . . . But the Courts cannot deny to . . . [accessories] the benefit of the law, as it was anciently settled, until it shall be altered by the Legislature."

The Supreme Court of Pennsylvania in *Commonwealth v. Minnich, supra,* was also faced with the identical issue as that now before us. There, the defendant was placed on trial as an accessory before the fact to murder, after the rendition of a guilty verdict against the principal but before sentence was imposed upon him. Applying the common law rule that an accessory cannot be tried until the principal has been convicted, the court was of the view that a jury verdict in and of itself is not a conviction as this term was used within the rule. The court reasoned that although the word conviction, as popularly understood, connotes simply a jury's verdict, a different, technical meaning was attributed to the word at common law. The appropriate definition of the word "conviction" was set forth as "the ascertainment of the guilt of the accused and judgment thereon by the court, implying not only a verdict but judgment or sentence thereon." 95 A. at 566-567. Thus, there being no sentence of the principal prior to the defendant's trial, the Pennsylvania court reversed the conviction and remanded for a new trial.

In *State v. Magliano, supra,* 7 Md. App. at 293-298, the defendant, charged with being an accessory after the fact, obtained a dismissal of the indictment on the ground that the principal, although having been indicted, died before he was convicted. In affirming the dismissal, the Court of Special

Appeals, in an opinion by Judge Orth, pointed out that the common law rule had its genesis in a thirteenth century statute, *Anno quarto Edwardi I* (1276), pp. 113-114, providing that an accessory shall be kept until the principal is attainted, and that this statute was determined, in Kilty's *Report of the Statutes* (1811), to be incorporated in Maryland law.[2] *See also State v. Ward, supra,* 284 Md. at 201-202 (stating the common law rule); *Randall v. Warden,* 208 Md. 667, 119 A.2d 712 (1956) (also recognizing the common law rule but holding that it did not avail the accessory as he had consented to be tried before the principal); *West v. State,* 3 Md. App. 662, 665, 240 A.2d 653 (1968).

In light of the above, there can be no doubt that under the law as it existed at the time the defendant Lewis was tried, his trial was improper because the principal Meyer had not been sentenced. Even if we are inclined to now abolish or modify this procedural rule, as urged by the State, such modification should in our judgment be given only prospective effect. Although it might not violate constitutional requirements to now modify the common law rule and apply such change retroactively to validate the defendant's unlawful trial, to do so may, in our view, impinge upon basic fairness. *Compare Dobbert v. Florida,* 432 U.S. 282, 97 S. Ct. 2290, 53 L. Ed. 2d 344 (1977), *reh. denied,* 434 U.S. 882, 98 S. Ct. 246, 54 L. Ed. 2d 166 (1977); *Marks v. United States,* 430 U.S. 188, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977); *Bouie v. City of Columbia,* 378 U.S. 347, 353-354, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964); *United States v. Rundle,* 383 F.2d 421, 425-427 (3d Cir. 1967), *cert. denied sub nom. Almeida v. Rundle,* 393 U.S. 863, 89 S. Ct. 144, 21 L. Ed. 2d 130 (1968); *State v. Moyer,* 387 A.2d 194 (Del. 1978); Art. 17 of the Maryland Declaration of Rights. *See also State v. Hicks,* 285 Md. 310, 334, 403 A.2d 356 (1979); *Wiggins v. State,* 275 Md. 689, 717, 344 A.2d 80, 95 (1975), and cases therein discussed.

2. In *Magliano,* Judge Orth for the court discussed in detail the history of the common law rule precluding trial of an accessory until the principal is sentenced, the one limited statutory modification before 1776 (1 Anne Ch. 9 (1702) which would not help the State in the instant case), the recognition of the rule in Maryland, and the post-1776 statutory changes in England and the American states other than Maryland.

Since the principal Meyer has now been sentenced, the common law rule governing the sequence of the trials would in no way preclude a trial of the defendant Lewis at this time. Consequently, our reversal of Lewis's conviction will be accompanied by a direction for a new trial. *State v. Duncan, supra,* 28 N.C. at 107; *Commonwealth v. Minnich, supra,* 95 A. at 568.[3] Although the application of the common law rule in this case necessitates a reversal only with respect to the murder counts, because the lesser counts are interrelated and may involve questions of possible merger, upon remand the new trial shall be as to all counts on which the defendant was convicted. *See* Maryland Rules 871 a and 874 a.

On the other hand, we agree with the State that we should now change the technical common law procedural rule mandating that an accessory cannot be tried before the principal is sentenced. The fact that this rule became part of the law of Maryland in 1776 does not preclude such change. Recently in *Pope v. State,* 284 Md. 309, 334, 396 A.2d 1054 (1979), we assumed that misprision of felony was a common law crime and that it became part of this state's law in 1776, but we held that it no longer exists in Maryland, stating "that the common law is subject to change." 284 Md. at 341. As it

---

**3.** Double jeopardy principles likewise pose no bar to retrial of the defendant. The decisions last year of the United States Supreme Court in Burks v. United States, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978), and Greene v. Massey, 437 U.S. 19, 98 S. Ct. 2151, 57 L. Ed. 2d 15 (1978), held that where an appellate court reverses the conviction of a defendant under circumstances where the trial court should have directed a verdict of acquittal because the evidence adduced at trial was insufficient to sustain his conviction, the defendant may not be retried. *See* the discussion of these cases in State v. Boone, 284 Md. 1, 12-18, 393 A.2d 1361 (1978). The requirement that there be a final judgment in the principal's trial might be viewed as an element of the crimes of accessory before or after the fact. Under this view, perhaps, failure to prove that the principal had been convicted and sentenced would constitute insufficient evidence with regard to an element of the crime. However, we believe that the better view of the common law rule concerning the sequence of trials is that it is merely a technical procedural or evidentiary rule governing trials, and not an element of the crimes of accessoryship. The crimes of being an accessory before the fact to the murder of one's spouse and child are completed upon the killing of the spouse and child. *See* State v. Sims, *supra* ("The fact then of the conviction of the principal does not enter into the definition of the crime of the accessary; it even constitutes no evidence of the guilt of the latter, and ... need not be stated in the indictment against him." 18 S.C.L. at 31.)

is often said, "the common law is not static but adopts itself to changing conditions and increasing knowledge." *Latz v. Latz a/k/a Schafer,* 10 Md. App. 720, 731, 272 A.2d 435 (1971), quoting *Maryland to use of Weaver v. O'Brien,* 140 F. Supp. 306, 311 (D. Md. 1956). This Court went on to say in *Pope v. State, supra,* 284 Md. at 341-342:

> "[The common law] may be changed by legislative act as Art. 5 of the Declaration of Rights expressly provides. ... It may also be changed by judicial decision. ... We asserted in *Ass'n of Taxi Oprs. v. Yellow Cab Co.,* 198 Md. 181, 204, 82 A.2d 106 (1951): 'We have frequently held that it is our duty to determine the common law as it exists in this State. ...' The doctrine of *stare decisis* does not preclude the exercise of this duty. We declared in *White v. King,* 244 Md. 348, 354, 223 A.2d 763 (1966): 'The doctrine of *stare decisis,* important as it is, is not to be construed as preventing us from changing a rule of law if we are convinced that the rule has become unsound in the circumstances of modern life.' *Accord, Hearst Corp. v. St. Dep't of A. & T.,* 269 Md. 625, 643-644, 308 A.2d 679 (1973)."

In our view, the common law rule precluding trial of an accessory until the principal is sentenced "has become unsound in the circumstances of modern life," *id.* at 342, and therefore should be changed. In *State v. Ward, supra,* 284 Md. at 192, we pointed out that the technical procedural rules accompanying the common law doctrine of accessoryship are illogical and " 'shield accessories from punishment notwithstanding overwhelming evidence of their criminal assistance.' " And as Judge Levine observed in his concurring opinion in *State v. Williamson,* 282 Md. 100, 113, 382 A.2d 588 (1978), these procedural rules were probably devised by 14th and 15th century English courts as a means of alleviating the harshness of the death penalty in all felony cases, but today they frequently operate "to thwart justice and reduce judicial efficiency." More than twenty years ago, this Court

recognized in *Watson v. State,* 208 Md. 210, 218, 117 A.2d 549 (1955):

> " 'This distinguishing of the accessory before the fact from the principal is a pure technicality. It has no existence either in natural reason or the ordinary doctrines of the law. For in natural reason the procurer of a crime is not chargeable differently from the doer; and a familiar rule of the common law is that what one does through another's agency is regarded as done by himself. . . . Likewise in morals, there are circumstances wherein we attach more blame to the accessory before the fact than to his principal; . . .' '' (Quoting 1 J.Bishop, *Criminal Law* § 673, at 486-87 (9th ed. 1923)).

Whatever may have been the reason for the rule governing the sequence of the accessory's and principal's trials, that reason has long since disappeared. Where the evidence adduced at an accessory's trial demonstrates beyond a reasonable doubt that a felonious homicide was in fact committed and that the defendant was an accessory to that crime, the defendant should not escape justice because there is yet no sentence in the principal's case or the principal may have died before he could be tried.

Consequently, commencing with the date of our mandate in the instant case, the trials of accessories before or after the fact will not be precluded because the principals have not been sentenced or even have not been tried. Henceforth, as long as the evidence in the accessory's trial is sufficient to demonstrate that a felony has been committed, the fact that the principal has not been convicted will furnish no defense to the accessory.[4]

---

4. In addition, under our rule-making authority, Art. IV, § 18A, of the Maryland Constitution, we shall consider the abolition generally of the technical procedural rules associated with the doctrine of accessoryship. In this connection, we shall ask the Court's Standing Committee on Rules of Practice and Procedure to study the matter and submit recommendations to us.

## II.

Although our reversal in this case rests upon the common law doctrine of accessoryship, the other matters raised on appeal by the defendant may come up again at his new trial. Therefore, for the guidance of the trial court upon retrial, we shall comment upon the defendant's remaining contentions.

### (a)

In *Johnson v. State,* 282 Md. 314, 384 A.2d 709 (1978), we held that the provisions of Maryland District Rule 723 a, requiring that, after arrest, an accused be taken before a judicial officer without unnecessary delay and in no event later than twenty-four hours after arrest, are mandatory, and that a statement obtained from an arrestee during a period of unnecessary delay is inadmissible. Relying on *Johnson,* the defendant Lewis insists that the delay of approximately six and one-half hours between the time of his arrest and the time he was taken before a judicial officer requires suppression of the written confession made during this period.

The facts underlying this contention are as follows. The defendant voluntarily appeared at the police station for questioning on October 6 and October 7, 1977. He was not in custody, was not deprived of his freedom in any manner, was free to leave the station at any time, and, in fact, did leave on several occasions throughout two days of questioning. Finally, in the early evening hours of October 7, 1977, the defendant orally confessed to his role in the killings. At that point, for the first time, the defendant was placed under arrest. For the next six to seven hours Lewis repeated in writing the substance of his prior oral confession. Immediately upon completion of his written statement, the defendant was presented before a judicial officer in Upper Marlboro, Maryland. The defendant argues that the six and one-half hour delay, for the purpose of having his oral confession reduced to writing, is not justifiable under the rule.

We observed in *Johnson v. State, supra,* 282 Md. at 320:

"[W]here the delay is less than the prescribed maximum, the rule anticipates that a determination as to the necessity and reasonableness of the delay will be made by courts on a case-by-case basis."

Later, we set forth several circumstances which "might [be] include[d]" as "[e]xamples of necessary delay." *Id.* at 329. That list, however, was obviously not intended to be exclusive. In our view, where the defendant has already orally confessed immediately prior to being arrested, a delay limited to six and one-half hours, for the sole purpose of reducing the oral confession to writing, is not unreasonable. Instead, it is designed to insure that what the defendant desires to relate is accurately recorded. This clearly serves the interests of both the State and the defendant.

### (b)

The defendant next argues that his confession should be suppressed as the product of an illegal search. *See Dunaway v. New York,* 442 U.S. 200, 99 S. Ct. 2248, 2258-2260, 60 L. Ed. 2d 824 (1979); *Brown v. Illinois,* 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975); *Wong Sun v. United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). The basis for this contention centers upon the police officers' search of his home, where an incriminating poem was found which first indicated to the police that Lewis may have been involved in the killings. It is argued that the poem played a key role in eliciting Lewis's confession. Because we hold that the search and seizure was consented to, we reject the defendant's argument.

Upon returning home on September 23, 1977, to the scene of the murders and finding the bodies of his wife and daughter, the defendant Lewis summoned the police to the house. The officers sought the defendant's assistance, and Lewis was apparently anxious to cooperate with the investigation. Lewis was not initially suspected of being involved in the killings, but he was regarded by the police as a primary source of information. When Lewis was about to

go to Michigan to attend the funerals of his wife and daughter, the chief investigating police officer informed him that it would be necessary, as part of the investigation, for the police to enter the house in his absence and go "through personal papers and things like that." Lewis did not expressly consent to this, but he also offered no objection. He then willingly arranged to leave his house key with a neighbor in order to give the police access to the premises. It was during the time Lewis was attending the funerals that the allegedly incriminating poem was discovered.

The defendant, in arguing that there was no consent to the search, relies upon *Bumper v. North Carolina,* 391 U.S. 543, 548-549, 88 S. Ct. 1788, 1792, 20 L. Ed. 2d 797 (1968), where the Court held that mere "acquiescence to a claim of lawful authority" was not sufficient to show consent to a search. But in the instant case, we have more than simply acquiescence to the police officer's claim that it was necessary to search the house. The defendant had indicated a purpose of cooperating with the police and then affirmatively made arrangements for the police to obtain a house key during his absence. In our judgment, these circumstances are sufficient to demonstrate that the search was freely and voluntarily consented to and therefore not violative of the Fourth Amendment. *See United States v. Watson,* 423 U.S. 411, 424-425, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976); *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Logue v. State,* 282 Md. 625, 628-631, 386 A.2d 780 (1978); *State v. Wilson,* 279 Md. 189, 201-205, 367 A.2d 1223 (1977).

### (c)

The defendant confessed to his complicity in the murders of his wife and daughter after undergoing extensive questioning by officers of the Prince George's County Police Department. One of the grounds for his motion in the circuit court to suppress the confession was that it was involuntary "in the traditional sense." *See State v. Kidd,* 281 Md. 32, 36, 375 A.2d 1105, *cert. denied,* 434 U.S. 1002, 98 S. Ct. 646, 54

L. Ed. 2d 498 (1977). *See also Dempsey v. State,* 277 Md. 134, 355 A.2d 455 (1976). Although the trial judge found that the voluntariness of the defendant's confession gave him "trouble," he denied the motion to suppress. On appeal this ruling is challenged by the defendant.

Some of the facts underlying the claim that the confession was involuntary are undisputed. They are as follows. Beginning approximately two weeks after the death of his wife and daughter, the police requested that Lewis come to the police station for questioning. On October 6, 1977, the defendant voluntarily appeared at the police station and, after being fully advised as to his *Miranda* rights, underwent questioning off and on for a period of two days, during which time he was treated in a generally cordial manner. Lewis was not promised any benefits in exchange for talking. Up until the time the defendant made his statement, at about 6:00 p. m. on October 7, 1977, his freedom of movement was in no way restricted. At the end of questioning on the first day, Lewis went home to sleep and voluntarily returned the next morning. Intermittently throughout the two days of interview, the defendant was in a nervous and highly emotional state of mind; at several points during questioning he broke down crying. During the interrogation, the police officers asked Lewis if he would be willing to subject himself to a polygraph test in order to demonstrate that he had not been involved in the crimes. The defendant agreed to take the test, which was first administered on October 6, 1977, and then again on October 7, 1977. After the first day of testing, although in no way under arrest, the defendant was accused by the police official administering the test of perpetrating the killings. Again after concluding the second day of polygraph testing on October 7, 1977, the defendant was accused of being involved in the crimes. At the same time, a police officer whom the defendant had not previously met falsely told the defendant that he was the "Captain" in charge of the investigation when in fact he was a corporal. It was in response to the accusations and questioning by this officer that the defendant confessed.

In addition to the above-summarized uncontroverted facts,

Lewis testified that he was told by a police officer that failure to take a lie detector test would essentially amount to an admission of his guilt. The defendant also claimed to have suggested to his interrogators that he desired to speak to an attorney. Finally, Lewis contended that the police told him that if he requested a lawyer he would be labeled a murderer. The defendant maintained that the police informed him that asking for a lawyer amounted to an admission of guilt. All of this testimony was contradicted by the police officers. They denied that any of these statements were made.

Although concluding that the defendant's confession was voluntary, the trial court failed to resolve the factual disputes set forth above. On remand, if the same discrepancies in the testimony arise, the trial court should resolve them and clearly set forth its findings on the disputed matters.

We note that if the testimony of the police officers is believed, then, under the totality of the circumstances, there would be little basis for the argument that the confession was involuntary. However, if the trial court should accept the defendant's version of the disputed facts, a much closer question will be presented. Particularly troublesome are the allegations of the police misstatements concerning requests for an attorney.

A degree of police deception to obtain a confession is tolerated. *See, e.g., Procunier v. Atchley,* 400 U.S. 446, 91 S. Ct. 485, 27 L. Ed. 2d 524, *reh. denied,* 401 U.S. 966, 91 S. Ct. 966, 28 L. Ed. 2d 249 (1971); *Frazier v. Cupp,* 394 U.S. 731, 89 S. Ct. 1420, 22 L. Ed. 2d 684 (1969); *Rowe v. State,* 41 Md. App. 641, 398 A.2d 485 (1979); *United States ex rel. Hall v. Director, Etc.,* 578 F.2d 194 (7th Cir. 1978), *cert. denied,* 439 U.S. 958, 99 S. Ct. 360, 58 L. Ed. 2d 350 (1978); *United States ex rel. Lathan v. Deegan,* 450 F.2d 181 (2d Cir. 1971), *cert. denied,* 405 U.S. 1071, 92 S. Ct. 1520, 31 L. Ed. 2d 803 (1972); *Gardner v. State,* 263 Ark. 739, 569 S.W.2d 74 (1978), *cert. denied,* 440 U.S. 911, 99 S. Ct. 1224, 59 L. Ed. 2d 460 (1979); *Matter of D.A.S.,* 391 A.2d 255 (D.C. Ct. App. 1978); *Burch v. State,* 343 So. 2d 831 (Fla. 1977); *State v. Boren,* 224 N.W.2d 14 (Iowa 1975), *cert. denied,* 422 U.S. 1008, 95 S. Ct. 2630, 45 L. Ed. 2d 671 (1975); *People v. McGuffin,* 55 A.D.2d 772, 389

N.Y.S.2d 478 (1976); *Commonwealth v. Jones,* 457 Pa. 423, 322 A.2d 119 (1974).

On the other hand, there are limits to the type of police deception which will be tolerated without rendering a confession involuntary, particularly with regard to deception concerning constitutional rights. *See* the discussion in *Miranda v. Arizona,* 384 U.S. 436, 455-457, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3d 974 (1966). *See also People v. Johnson,* 70 Cal. 2d 469, 450 P.2d 265, 74 Cal. Rptr. 889 (1969); *United States v. Tarlowski,* 305 F. Supp. 112 (E.D.N.Y. 1969); *United States v. LaVallee,* 285 F. Supp. 233 (S.D.N.Y. 1968), *aff'd,* 417 F.2d 411 (2d Cir. 1969), *cert. denied sub nom. McMann v. Vanderhorst,* 397 U.S. 925, 90 S. Ct. 930, 25 L. Ed. 2d 105 (1970).

In view of the uncertainty concerning the pertinent facts, we shall not now attempt to determine whether the State proved that the defendant's confession was voluntary. To repeat, if the issue arises upon remand, the trial court should resolve the factual disputes and then, in light of the facts as found, make a determination as to voluntariness.

### (d)

The defendant next contests the propriety of his being convicted and sentenced for both murder and solicitation to murder the same person. He argues that solicitation to murder merges into the crime of being an accessory before the fact to the same murder.

Most recently in *Brooks v. State,* 284 Md. 416, 419-422, 397 A.2d 596 (1979), we reiterated that the so-called "same evidence" or "required evidence" test is the normal standard for determining merger of offenses as well as for deciding whether two offenses are deemed the same for double jeopardy purposes. That test was explained in *Thomas v. State,* 277 Md. 257, 267, 353 A.2d 240 (1976), as follows:

"The required evidence is that which is minimally necessary to secure a conviction for each statutory offense. If each offense requires proof of a fact

which the other does not, or in other words, if each offense contains an element which the other does not, the offenses are not the same for double jeopardy purposes even though arising from the same conduct or episode. But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, the offenses are deemed to be the same for double jeopardy purposes."

The Court of Special Appeals, in *Cherry v. State,* 18 Md. App. 252, 258, 306 A.2d 634 (1973), quoting from Clark and Marshall, *Law of Crimes* (7th ed. 1967), set forth the following definition of what constitutes solicitation to commit a crime:

" 'The gist of this offense is incitement. In brief, the gravamen of the common-law misdemeanor lay in counselling, enticing or inducing another to commit a crime. . . .' "

In *State v. Ward, supra,* 284 Md. at 197, we defined an accessory before the fact as:

"[O]ne who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof, without having been present either actually or constructively at the moment of perpetration."

From these definitions it would appear that the crime of solicitation contains no element which is not also present in the offense of being an accessory before the fact. Thus, we hold that under the required evidence test, solicitation of murder merges into the offense of being an accessory before the fact to the same murder. On retrial, if the defendant is again convicted of being an accessory before the fact to the murders of his wife and daughter, he may not also be convicted of solicitation.

### (e)

Under Art. XV, § 5, of the Constitution of Maryland,

implemented by Maryland Rule 757 b, a jury in a criminal trial is instructed that it is the judge of the law as well as the facts, and that the court's instructions are merely advisory. *See Dillon v. State,* 277 Md. 571, 357 A.2d 360 (1976). An exception to this principle is that determinations of the law governing the admissibility of evidence are within the sole domain of the trial judge, *Brady v. Maryland,* 373 U.S. 83, 89-90, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and the Maryland cases there discussed.

Here, the defendant contends that by instructing the jury as to the law pertaining to the admissibility of confessions, and later telling them generally that the instructions are merely advisory, error was committed. In light of the instructions as a whole, we are not prepared to say that reversible error was committed. Nevertheless, we agree with the defendant that, since the jury's consideration of the voluntariness of the confession involves a delegation to it to determine the propriety of admitting this evidence, *Dempsey v. State, supra,* 277 Md. at 143-150, the instructions in this regard fall within the exception discussed in *Brady* and are consequently binding upon the jury. Henceforth in all criminal cases involving the jury's consideration of the admissibility of a confession, including the instant case on retrial, appropriate instructions to this effect should be given to the jury.

> *Judgment of the Circuit Court for Prince George's County reversed, and case remanded for a new trial. Costs to be paid by Prince George's County.*